Michael **ROBERTS** and Robert W. Flint, Jr., Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Donald C. **TAYLOR**, acting Director Rhode Island Department of Corrections, and James Mullen, Warden Adult Correctional Institutions, Defendants.

Civ. A. No. 5075.

United States District Court,
D. Rhode Island.

Feb. 25, 1975.

Ralph J. Gonnella, Cary J. Coen, Providence, R. I., for plaintiffs.

W. Slater Allen, Asst. Atty. Gen., State of Rhode Island, Providence, R. I., for defendants.

## OPINION

DAY, District Judge.

This is a class action wherein the named plaintiffs, inmates at the Rhode Island State Adult Correctional Institutions (hereinafter the "A.C.I."), seek declaratory and injunctive relief to redress alleged violations of their constitutional rights by the defendants.[1] Additionally, the plaintiffs seek, on behalf of—

". . . all adult persons incarcerated in the State of Rhode Island and who are in the custody and control of the Director of Corrections,"[2]

a court order prospectively prohibiting any similar, alleged constitutional violations by the defendants.

It is the plaintiffs' contention that certain practices adhered to by the defendants during the regular course of prison disciplinary proceedings at the A.C.I. suffer from constitutional infirmities. Specifically, the plaintiffs aver that the defendants' conduct in denying inmates, who have been charged with violations of prison regulations, either the right to the services of counsel at prison disciplinary hearings called to determine the validity of such charges and/or the

right to "use-immunity" so-called, at said prison disciplinary hearings, violates the plaintiffs' rights, and the rights of the members of the plaintiff class, as secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.[3]

The plaintiffs seek the following relief:

"(A) A declaratory judgment that the actions of the defendants in refusing plaintiffs the assistance of counsel complained of herein violates plaintiffs' rights and the rights of members of the plaintiff class secured by the Sixth and Fourteenth Amendments to the United States Constitution.

(B) A declaratory judgment that evidence and/or testimony (or evidence derived therefrom) produced at disciplinary hearings by plaintiffs or members of their class, may not be used in any subsequent Rhode Island State Criminal proceeding without violating the Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

. . .

(D) That after an opportunity of the defendants to be heard this court preliminarily and permanently enjoin the defendants, their agents, attorneys and persons acting in concert with them from disciplining the above-named plaintiffs or their class when the disciplinary charges might also result in the

1. The defendants herein involved are:
(A) Donald C. Taylor, Acting Director, Rhode Island Department of Corrections; and
(B) James Mullen, Warden, Adult Correctional Institutions. Mr. Taylor and Warden Mullen have automatically been substituted as party defendants pursuant to the provisions of Rule 25(d) of the Federal Rules of Civil Procedure.

2. See Plaintiffs' amended complaint, paragraph 7, at p. 3.

3. The plaintiffs have asserted that the defendants' denial of the right to counsel and/or of the right to "use immunity" in prison disciplinary hearings to inmates suspected of violating prison regulations is especially egregious where, as here, state criminal charges based upon the same alleged conduct have been filed against the plaintiff-inmates prior to the convening of said disciplinary hearings.

filing of state criminal charges without first:

1. Providing plaintiffs and members of their class with an opportunity to obtain the services of an attorney to represent them at said disciplinary hearing." [4]

Prior to a consideration of the validity of the plaintiffs' aforementioned claims for relief, a brief recital of the pertinent facts herein involved must, in an effort to facilitate disposition of the precise issues before the Court, be set forth. Accordingly, an abbreviated statement of the facts presently before the Court follows immediately below.

## I. PLAINTIFF ROBERTS

On December 3, 1972, plaintiff inmate Roberts was charged by officials at the A.C.I. with violation of prison disciplinary rules and regulations, that is, he was charged with possession of a hypodermic needle and syringe, assaulting a correctional officer and using abusive language to a correctional officer. Subsequent to an abbreviated, initial appearance before the A.C.I. prison disciplinary board, plaintiff Roberts was charged by the Rhode Island State Police with a violation of Rhode Island Criminal Laws, namely, possession of a hypodermic needle and syringe. Plaintiff Roberts entered a plea of not guilty at his arraignment in the Sixth Division District Court on December 12, 1972.

Plaintiff Roberts made a second, significantly longer, appearance before the A.C.I. prison disciplinary board on December 21, 1972. At this hearing Roberts requested permission to have legal counsel represent him before the disci-

plinary board. Additionally, he sought a grant of use and/or derivative use immunity concerning all testimony he might proffer at said hearing on the aforementioned charge of possession of a hypodermic needle and syringe. The prison disciplinary board denied both of these requests.[5]

Based on the evidence adduced at said hearing, the disciplinary board found plaintiff Roberts guilty of all of the violations charged and sentenced him to 30 days in segregation.

## II. PLAINTIFF FLINT

On November 29, 1972, prison officials at the A.C.I. filed disciplinary charges against plaintiff Flint alleging that he had assaulted another inmate with a dangerous weapon with a specific intent to kill said inmate, and that he had assaulted two correctional officers with a dangerous weapon. In addition to the filing of the aforementioned intra-prison disciplinary complaint, plaintiff Flint was, on December 4, 1972, arraigned in the Sixth Division District Court, in Cranston, Rhode Island, on charges of assault with intent to kill said inmate, and assault with a dangerous weapon on the aforementioned two correctional officers.[6] As was similarly true with plaintiff Roberts, the state criminal charges filed against plaintiff Flint arose out of the aforementioned alleged violations of prison regulations.

Plaintiff Flint made several appearances before the A.C.I. prison disciplinary board.[7] At each of said appearances plaintiff Flint requested, and was denied, both the opportunity to have the presence and assistance of legal counsel at said hearings and a grant of use-im-

---

4. See plaintiffs' Amended Complaint, at pp. 7–8.

5. As a result of said denials, Roberts refused to testify in his own behalf. He did, however, participate in cross-examination of the witnesses testifying against him. Immediately prior to the culmination of the disciplinary hearing, Roberts informed the board

members that had he been granted use and/or derivative use immunity, he would have presented exculpatory testimony in his own behalf.

6. Flint entered a plea of not guilty at his arraignment.

7. Said disciplinary hearings occurred on December 5, 21 and 29, 1974.

munity concerning all testimony he might proffer on the charges brought against him. As a result of said denials, plaintiff Flint refused to testify in his own behalf at the disciplinary hearings. On the basis of the evidence presented at said disciplinary hearings, plaintiff Flint was found guilty on all charges brought against him and was sentenced to 30 days segregation and 30 days loss of good time. Additionally, the disciplinary board recommended a downgrading of his inmate classification. *See* Trial Transcript, at pp. 42–43.

One final, and significant, factual circumstance must be noted. Each of the named plaintiffs herein involved was informed, prior to his request for use and/or derivative use immunity and prior to his subsequent refusal to testify in his own behalf, by the prison disciplinary board that—

" . . . although statements you make in your defense at a disciplinary hearing are probably not admissible for affirmative use by the prosecution at a trial, you may wish to consult an attorney to determine what action you wish to take . . ." *See* Trial Transcript, pp. 26, 60–61.

It is apparent, therefore, that plaintiffs Roberts and Flint, both of whom had been charged with the commission of state crimes *prior* to the convening of the prison disciplinary board hearings in question, were aware that any testimony they might give in their own behalf at said prison disciplinary board hearings could possibly be used against them in their pending state criminal prosecutions.

With the above-noted factual circumstances in mind, consideration of the merits of the plaintiffs' claims follows immediately below.

## I. RIGHT TO COUNSEL AT PRISON DISCIPLINARY HEARINGS

■ It is this Court's considered opinion that where, as here, prison inmates are charged with violations of prison regulations, and have, as a direct result of said alleged violations, been arraigned on charges of criminal behavior violative of state law,[8] said inmates are entitled to, and indeed, must be granted, the right to the presence of legal counsel during the course of the prison disciplinary hearings which are held to determine the validity of the intra-prison disciplinary charges. *See* Palmigiano v. Baxter, 510 F.2d 534, on consideration after remand (1st Cir. 1974); Clutchette v. Procunier, 497 F.2d 809 (9th Cir. 1974); *cf.* Mathis v. U. S., 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It must be noted, however, that this right to the presence of counsel neither includes nor contemplates active trial-like participation by said counsel at the disciplinary hearing. Inmates are entitled to the presence and assistance of counsel solely for the purposes of (1) receiving assistance in the preparation of a case prior to the disciplinary hearing, and (2) receiving advice at said disciplinary hearing. *See* Miranda v. Arizona, *supra*; Mathis v. U. S., *supra*; *cf.* U. S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966).

■ Logic and reason dictate that accused inmates must, under circumstances such as those in the present case, be afforded the opportunity to have counsel present during pertinent hearings of prison disciplinary boards. A balance must be struck, however, to accommodate the realistic needs and

---

8. This right to counsel accrues to inmates only so long as a state criminal prosecution for intra-prison offenses may be anticipated. *See* Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); Palmigiano v. Baxter, 510 F.2d 534 at pp. 536–37, on consideration after remand (1st Cir. 1974).

practicalities of prison life. It is for this reason that an accused inmate's right to counsel at a prison disciplinary hearing takes on the posture of a right to the presence of a non-participating legal advisor. Any other conclusion would unnecessarily impede prison disciplinary boards in their hearings.

## II. RIGHT TO USE AND/OR DERIVATIVE USE IMMUNITY

██ It is a well settled general rule of law that an accused's invocation of his Fifth Amendment privilege against self-incrimination cannot, in and of itself, give rise to an inference of guilt as to the offenses charged. *See* Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Palmigiano v. Baxter, *supra* ("His silence may not be used against him at that time or in future proceedings . . . " 510 F.2d at 536); *cf.* Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). Where, as here, an inmate, who is subject to state criminal prosecution for alleged intra-prison misconduct, is called before a prison disciplinary board to answer charges that he has, in fact, engaged in such misconduct, and where said inmate has invoked his Fifth Amendment privilege to remain silent and said invocation will be, and is in reality, considered by prison authorities as a factor relevant to the determination of the validity of the aforementioned charges of intra-prison misconduct,[9] said inmate is as of right entitled to a grant of use immunity. *See* Palmigiano v. Baxter, *supra* (" . . . where an inmate is called to a disciplinary hearing under the circumstances present here, and is informed that his silence will be used against him, or indeed where his testimony is compelled, use immunity must provided and the inmate must be so informed . . . " 510 F.2d at 536).

██ It must be noted, however, that an accused inmate is not entitled as of right to a grant of use immunity whenever he appears before a prison disciplinary board.[10] As previously mentioned, this Court's holding that the plaintiff-inmates herein involved should have been granted use immunity by the A.C.I. prison disciplinary board is premised on the existence of the following factors:

1. The plaintiff-inmates had, as a direct result of their alleged violation of prison regulations, been arraigned in Sixth Division District Court on' charges of criminal behavior violative of state law. Said arraignments occurred prior to the convening of the disciplinary board hearings in question; and

2. The plaintiff-inmates had invoked their Fifth Amendment privilege against self-incrimination at the disciplinary board hearings and said invocation was clearly viewed by prison officials as a factor relevant to the determination of the validity of the pending disciplinary charges of intra-prison misconduct.

---

9. See Trial Transcript, Testimony of Ex-Warden Howard, at pp. 84–87.

10. The First Circuit placed its imprimatur on this precept when it noted in Palmigiano v. Baxter, *supra* at p. 536, that—

"We now think that we were in error on two counts. In the first place, we too easily applied the right of an inmate to remain silent without his silence being used against him . . . to the situation in which no adverse inference is drawn from silence but in which the inmate must choose whether or not to testify to potentially self-incriminating matters in order to rebut or explain facts presented against him at the disciplinary hearing . . . Concededly, the prospect of future criminal prosecution places a prisoner before a disciplinary board in an awkward spot that could make the choice between speaking and remaining silent difficult. But . . . not every adverse consequence which flows from remaining silent can be characterized as an unconstitutional penalty upon the exercise of the privilege against self-incrimination."

Accordingly, it is this Court's considered opinion that the named plaintiffs should have been afforded not only the right to the presence of counsel to advise them, but also use-immunity, at the prison disciplinary board hearings in question. Insofar as the record before the Court clearly indicates that the A.C.I. disciplinary board did not satisfy these two constitutional requirements, the findings and decisions relating to the alleged infractions in question rendered by said disciplinary board must be expunged from the plaintiff-inmates' in-prison records. Additionally, the decision of the prison board, insofar as it recommended downgrading in plaintiff Flint's classification must be, and it is, vacated.

Moreover, it is this Court's determination that where state prison inmates, under circumstances such as those in the instant case, are denied (1) the right to the presence of counsel at prison disciplinary board hearings, and (2) the grant of "use-immunity" at said hearings said denials constitute a violation of the inmates' rights as secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Any evidence and/or testimony proffered by accused inmates at such constitutionally inadequate disciplinary board hearings cannot be employed by the State against said inmates in any subsequent state criminal proceeding.

The named plaintiffs have clearly established a necessity and propriety compelling the issuance of a court order permanently enjoining the defendants from meting out punishment to state prisoners, when intra-prison disciplinary charges might also result in the filing of state criminal charges, unless said inmates are granted the right to the presence of counsel at relevant prison disciplinary board hearings for the purpose of advising them as to their rights. Accordingly, the plaintiffs' prayer for the aforementioned permanent injunctive relief must be, and it is, granted. Counsel for the plaintiffs will prepare an appropriate order in conformity with this decision.