## MATHIS *v.* UNITED STATES.

No. 726. Argued April 2–3, 1968.—Decided May 6, 1968.

*Nicholas J. Capuano,* by appointment of the Court, 389 U. S. 966, argued the cause and filed a brief for petitioner.

*Daniel M. Friedman* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Rogovin,* and *Joseph M. Howard.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was convicted by a jury in a United States District Court on two counts charging that he knowingly filed false claims against the Government in violation of 18 U. S. C. § 287 [1] and sentenced to 30 months' imprisonment on each count, the sentences to run concurrently. The frauds charged were claims for tax refunds growing out of petitioner's individual income taxes for 1960 and 1961. Both income tax returns for these two years asserted receipts of income from two different companies which the government agents were unable to locate and which evidence offered tended to show were nonexistent. The amount of income claimed in each tax return was calculated in such a way as to show that these two non-existent employers had withheld taxes sufficient to justify substantial refunds to petitioner. The Government paid the 1960 tax refund to petitioner of $885.60 as claimed, but the record fails to show whether the 1961 claimed refund was paid. A part of the evidence on which the conviction rested consisted of documents and oral statements obtained from petitioner by a government agent while petitioner was in prison serving a state sentence. Before eliciting this information, the government agent did not not warn petitioner that any evi-

---

[1] 18 U. S. C. § 287 provides: "Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

dence he gave the Government could be used against him, and that he had a right to remain silent if he desired as well as a right to the presence of counsel and that if he was unable to afford counsel one would be appointed for him. At trial petitioner sought several times without success to have the judge hold hearings out of the presence of the jury to prove that his statements to the revenue agent were given without these warnings and should therefore not be used as evidence against him. For this contention he relied exclusively on our case of *Miranda* v. *Arizona*, 384 U. S. 436 (1966). The District Court rejected this contention as did the Court of Appeals in affirming. 376 F. 2d 595. We granted certiorari to decide whether the *Miranda* case calls for reversal. We hold that it does.

There can be no doubt that the documents and oral statements given by petitioner to the government agent and used against him were strongly incriminating.[2] In the *Miranda* case this Court's opinion stated at some length the constitutional reasons why one in custody who is interrogated by officers about matters that might tend to incriminate him is entitled to be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him

---

[2] Internal Revenue Agent Lawless testified that on October 30, 1964, he interviewed petitioner in the Florida State Penitentiary to determine if the 1960 return had been prepared by petitioner and to obtain petitioner's consent in writing to extend the statute of limitations on the 1960 return. At this interview petitioner identified the 1960 tax return and the signature thereon as his; he also signed the extension form. Again on March 2, 1965, Agent Lawless interviewed petitioner at the penitentiary, and this time petitioner identified the 1961 tax return and signature thereon as his and signed an extension form for this return.

4

prior to any questioning if he so desires." 384 U. S., at 479. The Government here seeks to escape application of the *Miranda* warnings on two arguments: (1) that these questions were asked as a part of a routine tax investigation where no criminal proceedings might even be brought, and (2) that the petitioner had not been put in jail by the officers questioning him, but was there for an entirely separate offense. These differences are too minor and shadowy to justify a departure from the well-considered conclusions of *Miranda* with reference to warnings to be given to a person held in custody.

It is true that a "routine tax investigation" may be initiated for the purpose of a civil action rather than criminal prosecution. To this extent tax investigations differ from investigations of murder, robbery, and other crimes. But tax investigations frequently lead to criminal prosecutions, just as the one here did. In fact, the last visit of the revenue agent to the jail to question petitioner took place only eight days before the full-fledged criminal investigation concededly began. And, as the investigating revenue agent was compelled to admit, there was always the possibility during his investigation that his work would end up in a criminal prosecution. We reject the contention that tax investigations are immune from the *Miranda* requirements for warnings to be given a person in custody.

The Government also seeks to narrow the scope of the *Miranda* holding by making it applicable only to questioning one who is "in custody" in connection with the very case under investigation. There is no substance to such a distinction, and in effect it goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights. We find nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons

under interrogation by officers based on the reason why the person is in custody. In speaking of "custody" the language of the *Miranda* opinion is clear and unequivocal:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." 384 U. S., at 478.

And the opinion goes on to say that the person so held must be given the warnings about his right to be silent and his right to have a lawyer.

Thus, the courts below were wrong in permitting the introduction of petitioner's self-incriminating evidence given without warning of his right to be silent and right to counsel. The cause is reversed and remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE WHITE, with whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.

I dissented from the Court's decision in *Miranda* v. *Arizona,* 384 U. S. 436 (1966), because I thought that the Court had accepted an interpretation of the Fifth Amendment having "no significant support in the history of the privilege or in the language of the Fifth Amendment," 384 U. S., at 526, and because I disagreed with the Court's "assessment of the [new] rule's consequences measured against community values," 384 U. S., at 537. I continue to believe that the decision in *Miranda* was an extravagant and unwise interpretation of the Fifth Amendment, and I would prefer that *Miranda* be aban-

6

doned, thus avoiding the reversal of this criminal conviction because of introduction at trial of statements by the petitioner that were unquestionably voluntary by traditional standards but were made without the petitioner's having received the so-called *Miranda* warnings.

However, even were I to agree that *Miranda* was correctly decided, I would not join the unexplained extension which the Court gives *Miranda* in this case. At issue are two questions [1] asked of petitioner by an Internal Revenue agent in the course of a civil investigation. The interview was indistinguishable from the thousands of inquiries into tax liability made annually as a necessary adjunct to operation of our tax system. The Court said in *Miranda* that "proper safeguards" were needed for "in-custody interrogation of persons suspected or accused of crime," 384 U. S., at 467. In this case the majority states that criminal investigation of Mathis began soon after the second of the visits to him of Revenue Agent Lawless. This suggests a view, unsupported by the record before us, that the civil investigation had raised suspicions of criminal conduct by Mathis at the time of this visit.[2] However, the majority also says that "tax investigations frequently lead to criminal prose-

---

[1] Petitioner was asked whether tax returns received by the Government bearing his name had in fact been prepared by him and whether he would consent to an extension of the statute of limitations for causes of action arising from those returns.

[2] A civil investigator is required, whenever and as soon as he finds "definite indications of fraud or criminal potential," to refer a case to the Intelligence Division for investigation by a different agent who works regularly on criminal matters. In the case before us, such a reference was made eight days after the second visit to petitioner by Agent Lawless. The criminal agent visited petitioner, gave him the full set of *"Miranda* warnings," and was told petitioner did not wish to discuss the case with him. No further questions were asked.

cutions," a hint that any in-custody questioning by an employee of the Government must be preceded by warnings if it is within the immensely broad area of investigations which "frequently lead" to criminal inquiries. Fortunately, voluntary compliance with civil regulation is widespread in this country. Nevertheless, compliance must be supplemented and encouraged by constant and widespread investigations, during which questions are asked and data are requested by employees of the Government whose goal is only to settle fairly the civil accounts between the United States and its citizens. Sometimes, of course, the possibility of a criminal violation is discovered through such inquiries. I had not thought that *Miranda* extended its checklist of warnings to these civil investigations. Certainly the explanation of the need for warnings given in the *Miranda* opinion does not cover civil investigations, and the Court's opinion in this case furnishes no additional support.

The Court is equally cavalier in concluding that petitioner was "in custody" in the sense in which that phrase was used in *Miranda*. The State of Florida was confining petitioner at the time he answered Agent Lawless' questions. But *Miranda* rested not on the mere fact of physical restriction but on a conclusion that coercion—pressure to answer questions—usually flows from a certain type of custody, police station interrogation of someone charged with or suspected of a crime. Although petitioner was confined, he was at the time of interrogation in familiar surroundings. Neither the record nor the Court suggests reasons why petitioner was "coerced" into answering Lawless' questions any more than is the citizen interviewed at home by a revenue agent or interviewed in a Revenue Service office to which citizens are requested to come for interviews. The

rationale of *Miranda* has no relevance to inquiries conducted outside the allegedly hostile and forbidding atmosphere surrounding police station interrogation of a criminal suspect. The Court's willingness to reverse without explaining why the reasons given for the *Miranda* decision have any relevance to the facts of this case is deeply troubling.