STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES EARL WILLIAMS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1970—Decided December 29, 1970.

564

Before Judges KILKENNY, HALPERN and LANE.

*Mr. Jack I. Doppelt* argued the cause for appellant.

*Mr. Joseph A. Fusco*, Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney; *Mr. Fusco,* on the brief).

The opinion of the court was delivered by

HALPERN, J. A. D.   Defendant appeals from a judgment of conviction for false swearing (*N. J. S. A.* 2A :131–4).   He was sentenced to a State Prison term of 2–3 years.

The undisputed facts are that on November 12, 1967 Robert Jones was murdered in the City of Newark.   On January 17, 1968 defendant was brought to the Essex County Prosecutor's office where he signed a sworn Statement identifying Willie Washington as the murderer.   In July 1968 a prosecutor's detective and an assistant prosecutor interviewed defendant several times at the Yardville Reformatory where he was then confined for a different offense.   Presumably their purpose in seeing defendant was to prepare for trial since he was the State's only eyewitness.   Defendant told them he intended to repudiate his sworn statement of January 17, 1968 because it had been obtained under duress, and that he would not, or could not, identify Washington as the murderer.

With this knowledge in mind the assistant prosecutor, on September 17, 1968, on notice to Washington, caused defendant to be brought before a Superior Court judge in Essex County, for a "special hearing" in open court for

two reasons: (1) to ascertain if the State still had a case, and (2) if defendant recanted, to lay a foundation for a false swearing complaint. Defendant was neither advised of his right to the assistance of counsel, nor warned that his answers might incriminate him. Defendant was not represented by counsel at the "special hearing" when he repudiated his January 17, 1968 sworn statement.

The holding of such a "special hearing" was proper since the State had to be certain that defendant, if placed under oath, would recant. *State v. Guido,* 40 *N. J.* 191, 200 (1963). In *Guido* a witness recanted during trial, and the court, in considering whether his testimony could be neutralized, suggested that:

When counsel has been advised a witness will not adhere to a prior statement but feels he should test that disavowal under oath, he should so inform the court at side bar. The witness should then be examined in the absence of the jury. [at 200]

The court suggested this procedure because if the State offered the witness at trial with reasonable cause to believe he intended to recant, and he did recant, such would be reversible error because of the resulting prejudice. *State v. Fournier,* 91 *N. J. Super.* 477, 480–481 (App. Div. 1966); *United States of America ex rel. Fournier v. Pinto,* 408 *F.* 2d 539, 541 (3 Cir. 1969).

We see no reason why the procedure suggested in *Guido,* with appropriate modification, may not be utilized prior to trial if the State has probable cause to believe that a witness will recant during trial. See *State v. Cullen,* 103 *N. J. Super.* 360, 364 (App. Div. 1968). In fact, from the State's viewpoint, it is essential, because of the time and expense involved that it know in order properly to prepare for trial. In the instant case the court dismissed the indictment on motion of the prosecutor, presumably made under *R.* 3:25–1, because defendant was its only witness.

Defendant was subsequently indicted and convicted by a jury of false swearing based upon the difference in his

original sworn statement of January 17, 1968 and his sworn testimony at the "special hearing" of September 17, 1968.

■ The issue before us is whether defendant, under the existing circumstances, was improperly compelled to be a witness against himself, and whether he was deprived of the assistance of counsel in violation of the Fifth and Sixth Amendments of the United States Constitution, Art. 1, para 10 of the New Jersey Constitution, and *N. J. S. A.* 2A:84A–17, 18 and 19. We have determined that his state and federal constitutional rights were violated requiring a reversal of his conviction for false swearing.

■ Defendant was in police custody when brought in for the "special hearing," and the State was laying a foundation for a possible false swearing charge. Under such circumstances the assistant prosecutor was obliged to advise defendant that his testimony might incriminate him and that he was entitled to the assistance of counsel. *Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed.* 2d 694 (1966) ; see also *State v. De Cola, 33 N. J.* 335, 350 (1960). *Miranda* makes it clear that the "Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed from being compelled to incriminate themselves." (384 *U. S.* at 467, 86 *S. Ct.* at 1624). It was stated thusly in *Murphy v. Waterfront Commission, 378 U. S. 52, 84 S. Ct. 1594, 12 L. Ed.* 2d 678 (1964) :

> The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory. * * * it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used. [at 94, 84 S. Ct. at 1611]

■ It is inherent in *Miranda* that there exists a right to counsel incident to the privilege — a right to be advised whether to answer or not, and to have counsel present during any questioning. Nor is it essential that a person request he be given a lawyer.

> While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given. The accused who does not know his rights and therefore does not make a request may be the person who most needs counsel. (384 *U. S.* at 470–471, 86 S. Ct. 1602).

If a person in custody accused of a crime is entitled to these constitutional protections, *Miranda's* rationale should include a witness in police custody under the circumstances here existing. Insofar as defendant was concerned, this was a critical stage at which he stood to lose valuable defenses or other rights, and needed the aid of counsel. *State v. Vogel,* 45 *N. J.* 400, 404–405 (1965).

The philosophy expressed in *Miranda* finds expression in what we deem to be an analogous situation when a prosecutor summons a witness before a grand jury who is the "target" of the inquiry. The duty of a prosecutor in these situations was considered in *State v. Fary,* 19 *N. J.* 431, 434, 436 (1955), and the court's views are worth repeating:

> The privilege of a witness against being compelled to incriminate himself, of ancient origin, is precious to free men as a restraint against high-handed and arrogant inquisitorial practices. * * * our conception of the fair play and self-respect which should attend a great state's administration of criminal justice demands that law enforcement authorities show a scrupulous regard for the rights of those accused of crime.

Thus, being the "target" of a grand jury investigation is sufficient, of itself, to support a Fifth Amendment claim. *In re Addonizio,* 53 *N. J.* 107, 117 (1968). In varying situations, courts have set aside convictions which were obtained by violating a person's constitutional rights — *e. g., Coleman v. Alabama,* 399 *U. S.* 1, 90 *S. Ct.* 1999, 26 *L. Ed.* 2d 387 (1970), where the assistance of counsel was mandated at a preliminary hearing; *Mathis v. United States,* 391 *U. S.* 1, 88 *S. Ct.* 1503, 20 *L. Ed.* 2d 381 (1968), where

an internal revenue agent interrogated a person in custody in a state jail on another charge; and *State v. Thomas,* 111 *N. J. Super.* 42 (Law Div. 1970), where a welfare recipient was questioned by a welfare investigator concerning alleged fraud in obtaining welfare relief.

The multitude of cases dealing with Fifth and Sixth Amendment rights, are primarily concerned with the actions of the police in violating the rights of individuals — here we are confronted with the actions of a prosecutor's assistant whose experience and training should have made him more sensitive to the problem and, therefore, worthy of closer scrutiny by us. See *State v. Cassatly,* 93 *N. J. Super.* 111, 121–122 (App. Div. 1966), certif. den. 48 *N. J.* 448 (1967), and cases cited therein, wherein it was held proper for the prosecutor and the court, during a trial, to advise a witness of his constitutional right not to testify.

In summary, the holding of the "special hearing" without advising defendant of his constitutional rights is violative of the Fifth and Sixth Amendments of the United States Constitution, which the Fourteenth Amendment makes applicable to the States, and Art. 1, para 10 of the New Jersey Constitution, and *N. J. S. A.* 2A:84A–17, 18 and 19.

Reversed.