114 N.J. Super. 222 (1971)
275 A.2d 760
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GLORIA E. GRAVES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1971.
Supplemental material filed March 1, 1971.
Decided April 2, 1971.
*223 Before Judges LEWIS, MATTHEWS and MINTZ.
Miss Cynthia M. Jacob, Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. David S. Baime, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor; Mr. George N. Pappas, Assistant Prosecutor, of counsel and on the brief).
Miss Nadine Taub submitted amicus curiae brief for Community Legal Action Workshop, Urban League of Essex County, Welfare Rights Organization of Essex County.
Mr. Joseph E. Cohen, Counsel, Mr. Ronald Reichstein, Associate Counsel, submitted amicus curiae brief for Essex County Welfare Board.
*224 The opinion of the court was delivered by MINTZ, J.A.D.
Defendant appeals from a judgment of conviction for having obtained county welfare funds by false pretense through her failure to disclose a material fact, contrary to N.J.S.A. 2A:111-3. The indictment under which defendant was convicted charged her with having received financial assistance between October 1, 1967 and February 1, 1968 from the Essex County Welfare Board by failing to disclose that during the stated period she was living with her husband.
On appeal defendant assigns several grounds for reversal, including the contention that the trial court erred in admitting into evidence statements made by defendant in a custodial interrogation where the four-fold warnings required under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), were not given.
The testimony discloses that defendant had been receiving continuing assistance from the welfare board since 1963. On May 24, 1967 she signed her semi-annual application for aid to dependent children, in which she indicated that her household consisted of herself and three children. In September or October of that year she began to receive aid for a fourth child.
On the application form the recipient of welfare funds is required to report immediately to the county welfare board any change in his or her living conditions, family situation or income from any source. This was undoubtedly known to defendant. The witness Mitchell Osur, a moving company owner, testified that he employed Harold Graves (defendant's husband) from November 1967 through February 1968. Osur said that Harold Graves gave an address identical to defendant's, and claimed four income tax exemptions, including himself.
Investigator Harry O'Boyle of the welfare board testified that four checks, each in the sum of $322, were paid to defendant as assistance for the months of November 1967 through February 1968. He further testified that on February *225 2, 1968 he interviewed Harold Graves, who told him that he had been living with defendant "for a period of time." He contacted the welfare board and was advised that on their reports Harold Graves was noted as not living at the home. O'Boyle then contacted defendant and arranged for an interview with her which was held that same day at the welfare office in the presence of Mr. Deangelus, supervisor of the fraud department of the welfare board.
At this point defendant requested and was granted a voir dire hearing to determine if the Miranda warnings were given before any confession or statement was elicited from her. O'Boyle then testified that defendant was informed by Deangelus of her right to counsel, her right to have counsel appointed if she was without funds to engage counsel, and that anything she would say could be held against her. It clearly appears that she was not told of her right to remain silent. Subsequently, a statement was taken from her in which she admitted that Harold Graves returned to her home in October 1967 and continued to reside there continuously up to the date of the interview. She indicated to him that she was afraid to notify the welfare board of this fact.
Defendant testified that the February 2, 1968 interview was held on the fourth floor of the welfare board's office (presumably the fraud section department) in the presence of six male investigators. She denied receiving any of the Miranda warnings.
At the close of the voir dire hearing, the trial court ruled that Miranda warnings were inapplicable to the type of interrogation here involved.
O'Boyle then testified before the jury to the same effect as he had in the voir dire hearing. The four checks were marked in evidence. O'Boyle further stated that had timely notification of Harold Graves' return to defendant's home been furnished the Welfare Board, a reduction to $186 monthly would have been made. To O'Boyle's knowledge, defendant did not notify anyone of the change in her household status and it was for this reason that he "asked her to *226 come down to the investigational unit of the County Welfare Board on the fourth floor to discuss the situation."
Defendant testified in her own behalf, but we find it unnecessary to summarize her testimony.
Clearly defendant did not receive the full Miranda warnings in that she was not told of her right to remain silent. The basic issue is whether Miranda is applicable in the instant situation. The fact that the investigation was not a police investigation does not mean that Miranda is inapplicable, for in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), a case involving interrogation by an Internal Revenue agent, the court indicated that not only was the interrogation custodial since it took place in a prison where defendant was confined on an unrelated offense, but also that Miranda warnings were necessary since "there was always the possibility that [the agent's] work would end up in a prosecution." This latter statement covers the crucial point in this case, for it is established that when the interrogation process shifts from investigatory to accusatory  when its focus is on the accused and its purpose is to elicit a confession  our adversary system begins to operate and the accused is entitled to the presence of counsel as well as to be given the other Miranda warnings. See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). While Miranda is aimed at "station house" abuses, later cases have made it clear that the custody in question need not be custody at a police station or for that matter custody in a given enclosed area. Rather the test for determining if Miranda applies is if the person interrogated is "in custody at the station or otherwise deprived of his freedom of action significant in any way." Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); State v. Williams, 97 N.J. Super. 573, 597 (Law Div. 1967), aff'd 106 N.J. Super. 371 (App. Div. 1969).
We do not suggest that welfare agencies are not free to interrogate the recipients of their benefits. As a matter *227 of fact, we regard routine inquiries as highly essential in assuring the legitimate allocation of assistance to those in need, and in denying assistance to those not entitled to the same. However, in the instant situation the welfare board fraud division already knew from Mr. Graves of defendant's changed circumstances. Thus, when defendant was subjected to interrogation by a representative of the fraud division and in the presence of the supervisor of that division, the interrogation had reached an accusatory stage in which she was the target. It is important, also, to note that the circumstances surrounding the investigation contained clear elements of psychological duress, as evidenced by defendant's testimony that she did not notify the welfare board of her husband's return because she was "afraid," presumably of losing some of her benefits. In the circumstances of this case she was clearly entitled to the full Miranda warnings in order to protect her constitutional rights to counsel and against self-incrimination. State v. Thomas, 111 N.J. Super. 42 (Law Div. 1970).
In view of this determination we deem it unnecessary to consider the remaining contentions advanced by defendant.
Reversed and remanded for a new trial.