**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**JUL 3 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT RAY CHARLES,

    Defendant-Appellant.

No. 00-3334
(District of Kansas)
(D.C. No. 00-CR-20022-01-KHV)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE** and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This court therefore honors the parties' requests and orders the case submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Robert Ray Charles entered a conditional guilty plea to a single count of possession of a firearm by an interdicted person in violation of 18 U.S.C. § 922(g)(1). As part of the plea agreement, Charles reserved the right to appeal the district court's denial of his motion to suppress. *See* Fed. R. Civ. P. 11(a)(2). On appeal, Charles asserts that the district court erred in refusing to suppress the firearm, which formed the basis of his conviction, found in a consent-based search of his car because the consent was obtained while he was being illegally detained. Because this court agrees with the district court that the detention of Charles was supported by reasonable, articulable suspicion, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm**.

The facts, as found by the district court after an evidentiary hearing and accepted for purposes of appeal by Charles, are as follows. On August 24, 1999, a customer at Circuit City in Lenexa, Kansas asked a store clerk for a stereo and camcorder. After the store clerk presented one of each item, the customer quickly agreed to take them without asking any questions about the merchandise. When the customer attempted to purchase the items with a check, William VonWolf, a Circuit City employee, refused to accept it. VonWolf believed that the customer had forged the signature on the check because he was certain that the customer was not the individual pictured on the identification card presented. The customer then took the check and identification card and left the store. VonWolf

-2-

observed that the customer carried the check and identification in a white envelope and that he left in a Lincoln automobile with Missouri license plate number 614 FXW. VonWolf called the Lenexa Police Department and reported the description of the customer, the car, and the license plate number. VonWolf also told the police department that the customer signed the check in the name of Shannon Watkins and presented a driver's license bearing that same name.

Shortly thereafter, police officers discovered a Lincoln automobile with the same license plate at a nearby Best Buy store. Officer James Rader asked VonWolf to go to Best Buy to identity the individual who had attempted to pass the check at Circuit City. Inside Best Buy, Officer Pat Hinkle saw Charles, who matched the description of the Circuit City customer, negotiate an $1840 check to an employee at Best Buy. Officer Hinkle observed that Charles signed the check in the name of Shannon Watkins and relayed this information to officers outside the store. As Charles left the store, VonWolf positively identified him as the customer who had attempted to pass the check at Circuit City.

Officers Rader and David Ogilvie approached Charles and asked him to identify himself. Charles identified himself as Calvin Stallings but indicated that he did not have any identification. The officers asked Charles if he had signed a check at Circuit City in the name of Shannon Watkins. Charles denied that he had tried to purchase goods at Circuit City. While this conversation was ongoing,

Officers Rader and Ogilvie saw several Best Buy receipts inside a white envelope on the driver's seat of Charles' car. Neither officer observed Charles place the envelope in the car. Officer Ogilvie grabbed the envelope and found a Missouri driver's license for Calvin Stallings and a check with Circuit City as payee. Shortly after Officer Ogilvie grabbed the envelope, Officer Gary Redding obtained Charles' consent to search the vehicle. Charles told Officer Redding that he could search the vehicle but that it did not belong to him. Officer Ogilvie then handed the envelope and its contents to Officer Redding, who handed them to Officer Rader, who looked at the checks and placed Charles under arrest. During the search of Charles' car, officers discovered a black briefcase which contained a firearm and cocaine base.

Based on the firearm and drugs found in Charles' car, he was indicted on the following two federal charges: (1) possession of a firearm by an interdicted person in violation of 18 U.S.C. § 922(g)(1); (2) and one count of possession of cocaine base in violation of 21 U.S.C. § 844. In response to the indictment, Charles filed a motion to suppress in which he asserted, *inter alia*, that his seizure was illegal because it was not supported by reasonable, articulable suspicion. Thus, according to Charles, his consent to search the car during that illegal detention was invalid as a fruit of the poisonous tree. *See United States v. Maez*, 872 F.2d 1444, 1453 (10th Cir. 1989) (holding that if a consent to search obtained

-4-

during an illegal detention is not sufficiently an act of free will to purge the primary taint of the illegal detention, the fruits of the search must be suppressed).

In rejecting Charles' claim that he was illegally detained at the point that he gave consent, the district court applied the controlling analytical framework set forth by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968). Applying this framework, the district court recognized that the detention was proper as long as it was supported by reasonable suspicion of wrongdoing at every stage. *See United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998) ("[R]easonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout."). With this requirement in mind, the district court ruled as follows:

> Here, the officers had an objectively reasonable suspicion of illegal activity which permitted them to stop defendant. This suspicion was based on (1) VonWolf's description of the individual at Circuit City and the car and license plate which he had driven, (2) VonWolf's report that the customer was not the individual pictured on the identification which he presented, (3) the fact that defendant had signed a check with the same name (Shannon Watkins) as the individual at Circuit City, and (4) VonWolf's positive identification of defendant at Best Buy. Thus the initial stop of defendant was justified. In addition, the scope of the investigative detention was reasonable. After officers stopped defendant, he identified himself as Calvin Stallings. Officers had a reasonable suspicion at that point that defendant had either forged a check in the name of Shannon Watkins, *see* Kan. Stat. Ann. § 21-3710, or obstructed legal process by misidentifying himself to the officers, *see* Kan. Stat. Ann. § 21-3808. For these reasons, defendant's motion to suppress based on his investigative detention is overruled.

In light of this ruling, Charles entered a conditional guilty plea as to the § 922(g)(1) weapons count, preserving his right to appeal the district court's order denying suppression.

On appeal, Charles presents a particularly narrow challenge to the district court's order denying suppression. His sole contention is that his initial stop outside of the Best Buy was not supported by reasonable suspicion of wrongdoing.[1] Because Charles does not challenge the district court's factual findings, but instead challenges only the district court's conclusion that in light of those facts the initial stop was reasonable, our review is *de novo*. *See United States v. Caro*, 248 F.3d 1240, 1243 (10th Cir. 2001) ("[T]he ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review *de novo*.").

Upon *de novo* review, this court affirms the district court's denial of Charles' suppression motion for substantially those reasons set out in the district court order dated May 1, 2000. Charles asserts in his brief that propriety of the

---

[1]*See* Appellant's Brief at 8 ("Appellant asserts that the District court erred in finding that police had a reasonable, objective belief that Appellant was engaged in criminal conduct on August 24, 1999."); *id.* at 9 ("The District Court determined that the investigative detention of Appellant was justified under *Terry v. Ohio*, 391 U.S. 1 (1968) and that Appellant consented to the search of his car during that lawful investigative detention. In this appeal, Appellant challenges the determination by the District Court that officers had a reasonable basis to make a *Terry* stop at the time the stop was initiated.").

initial stop is entirely dependent on the propriety of VonWolf's assertion to the police officers that the person pictured on the driver's license presented by Charles was not the same person who presented the check. Charles then asserts, without any citation to the record, as follows: "In the brief time VonWolf could make a comparison, his belief could best be characterized as a hunch." Appellant's Brief at 11; *see also Terry*, 392 U.S. at 21, 27 (holding that an unparticularized suspicion or hunch is not sufficient to conduct a *Terry* stop). The problem with Charles' argument, however, is that it is completely lacking in record support. Officer Rader testified at the suppression hearing as follows with regard to VonWolf's report of suspicious activity which initiated the investigation leading to the detention:

> [VonWolf] told me that a black male had entered the store, was interested in buying a home stereo system and I believe video camcorder. He said the man asked what type of items they had, and when he showed him, he immediately said I'll take it without asking any questions whatsoever about the merchandise. And he said he was walking the suspect or the man up to the front register and the man reached into his pocket and pulled out a white envelope which contained a Missouri driver's license and two business checks. The man endorsed one of the business checks in the name of Shannon Watkins which was on the Missouri driver's license, and [VonWolf] said when he looked at the license, he was certain that the man on the license was not the same person who had presented him the check.

VonWolf's report of suspicious activity, taken together with the other factors identified by the district court, certainly provided the officers with reasonable suspicion of wrongdoing sufficient to support the initial detention. *See United*

*States v. Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993) (holding that whether "an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances").

The order of the United States District Court for the District of Kansas is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge