McKEAGUE, Circuit Judge,
concurring.
I agree that the outcome of this case is controlled by this court’s prior decision in Simpson v. Jackson, No. 08-3224, 615 F.3d 421, 2010 WL 2771861 (6th Cir. July 13, 2010). However, I write separately because I disagree with both Simpson’s and the majority’s interpretation of two Supreme Court cases: Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) and Mainland v. Shatzer, — U.S. -, 130 S.Ct. 1213, — L.Ed.2d — (2010). In particular, in contrast to the majority and Simpson, I do not believe that Mathis obviates the need for the context-specific custody analysis clearly established by Miranda and its progeny. Moreover, I do not agree with the majority that Mathis established a bright line test to the effect that, “[a] Miranda warning must be given when an inmate is isolated from the general prison population and interrogated about conduct occurring outside of the prison.” Majority Op. at 822 (emphasis added). Instead, applying the context-specific Miranda custody analysis under the deferential review mandated by AEDPA, I believe that the proper course of action in this case would be to reverse the district court and uphold the state court’s determination.
I read Mathis as standing for a narrower proposition than does the majority. The Court in Mathis addressed the government’s argument that it should: “narrow the scope of the Miranda holding by making it applicable only to questioning one who is ‘in custody’ in connection with the very case under investigation.” 391 U.S. at 4, 88 S.Ct. 1503. The Court found that there was “nothing in the Miranda opinion which call[ed] for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody.” Id. at 4-5, 88 S.Ct. 1503. Therefore, Mathis holds that Miranda applies to a person interrogated while in prison on charges unrelated to the investigation for which he is interrogated, but it does not establish that such a person is automatically in custody or entitled to Miranda warnings anytime he is interrogated away from the general prison population. Instead, this determination depends on the context— specific analysis of whether the inmate is deemed to be “in custody”; i.e., whether he was subject to the sort of isolation and coercive influence that trigger the need for Miranda warnings.[1] Therefore, I would *825 not read the “essential holding” of Mathis to be that “Miranda warnings must be administered when law enforcement officers remove an inmate from the general prison population and interrogate him regarding criminal conduct that took place outside the jail or prison.” Majority Op. at 820.
Furthermore, I also do not read Shatzer as broadly as does the majority here. Admittedly, Shatzer does state that: “[n]o one questions that Shatzer was in custody for Miranda purposes during the interviews with Detective Blankenship in 2008 and Detective Hoover in 2006.” — U.S. at -, 130 S.Ct. at 1224. However, the fact that no one questioned whether Shatzer was in custody, does not mean (or clearly establish) that anytime an inmate is removed from the general prison population and interrogated he is “in custody” for Miranda purposes. Instead, it only means that the parties, unlike the government in this case, did not make an issue of the “in custody” requirement in relation to those specific interrogations.
Consequently, instead of adopting a bright line rule governing the interrogation of those already in prison and mandating that we find that Fields was in custody, I believe that the normal, context-specific analysis articulated in Miranda and its progeny applies here and that this analysis should determine whether Fields was in custody for Miranda purposes. In speaking of “custody,” the language of the Miranda opinion indicates that “when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.” Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, as the Court’s cases “make clear ... the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody” and “Miranda is to be enforced ‘only in those types of situations in which the concerns that powered the decision are implicated.’ ” Shatzer, — U.S. at -, 130 S.Ct. at 1224 (quoting Berkemer, 468 U.S. at 437, 104 S.Ct. 3138). The Court noted in Berkemer that:
The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the inherently compelling pressures generated by the custodial setting itself, which work to undermine the individual’s will to resist, and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.
Id. at 433, 104 S.Ct. 3138 (internal citations and quotations' omitted). Indeed, under the Miranda custody test: “[t]wo discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.” Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); see also Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S.Ct. 2140, 158 *826 L.Ed.2d 938 (2004) (“Our more recent cases instruct that custody must be determined based on how a reasonable person in the suspect’s situation would perceive his circumstances.”); Stansbury v. California, 511 U.S. 318, 322-23, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam) (noting that courts “must examine all of the circumstances surrounding the interrogation” and that “the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned”). Consequently, the Miranda custody analysis in this case is shaped by the circumstances surrounding Fields’ interrogation, including the fact that Fields was already incarcerated on separate charges and, therefore, that he lived in prison. See Shatzer, — U.S. at -, 130 S.Ct. at 1224 (noting that “[interrogated suspects who have previously been convicted of crime live in prison” and that “incarceration pursuant to a conviction” is a prisoner’s “normal life” and, thereby, recognizing that the prison setting is not inherently coercive).
Turning to the particulars of this case, the Michigan Court of Appeals was the last state court to issue a reasoned opinion considering this issue. That court noted that the fact that “a defendant is in prison for an unrelated offense when being questioned does not, without more, mean that he was in custody for the purpose of determining whether Miranda warnings were required.” People v. Fields, 2004 WL 979732, *2 (Mich.Ct.App. May 6, 2004) (citation omitted). The court also noted that:
[Djefendant was unquestionably in custody, but on a matter unrelated to the interrogation. Although defendant was not read his Miranda rights, he was told that he was free to leave the conference room and return to his cell. Defendant never asked to leave. Because Miranda warnings were not required, the trial court did not err in denying defendant’s motion to suppress his statement.
Id. Obviously or “unquestionably,” Fields was in custody in the sense that he was incarcerated on a matter unrelated to the interrogation. However, this does not mean that he was “in custody” for purposes of the Miranda and, indeed, the Michigan Court of Appeals went on to describe the fact that Fields would have felt free to terminate the interview and leave, which is critical to the Miranda custody determination. Id. In particular, even though Fields was interrogated in a separate conference room, he was told that he was free to leave the conference room and return to his cell; consequently, the Michigan Court of Appeals concluded that Fields was not subject to the sort of coercion necessary to trigger Miranda warnings because he was not in custody for purposes of Miranda.[2]
We view this determination under AED-PA which, to grant relief, requires that we find the state court’s decision to be “contrary to, or involve! ] an unreasonable application of, clearly established Federal law” as established “by the Supreme Court.” 28 U.S.C. § 2254(d)(1). A state-court decision is “contrary to” clearly established federal law if: (1) the state court applies a rule that contradicts the governing law set forth by the Supreme Court in its cases, or (2) the state court confronts a set of facts that are materially indistinguishable from those presented in a Supreme Court decision and nevertheless arrives at a result different from Supreme Court precedent. Williams, 529 U.S. at 405-06, 120 S.Ct. 1495. In order to eonsti *827 tute an “unreasonable application” of clearly established federal law, a state court’s application of federal law to the facts of the case must be “objectively unreasonable.” Id. at 409, 120 S.Ct. 1495; see also Renico v. Lett, — U.S. -, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010). The Supreme Court has stressed that “the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law.” Id. at 410, 120 S.Ct. 1495 (emphasis in original); see also Alvarado, 541 U.S. at 665, 124 S.Ct. 2140 (conducting AEDPA review in the Miranda custody context and noting that: “We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter. ‘[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly.’”).
As discussed above, the Michigan Court of Appeals’ decision has not been shown to be contrary to clearly established Supreme Court precedent. That court did not apply a rule that contradicts the governing law set forth by the Supreme Court in its cases; instead, it applied the correct, context-specific Miranda custody test. Nor did the Michigan Court of Appeals arrive at a result different from Supreme Court precedent on a set of facts that are materially indistinguishable from a Supreme Court decision. Furthermore, while a close call, I cannot say that the Michigan Court of Appeals’ decision applying the context-specific Miranda custody analysis is objectively unreasonable. The Michigan Court of Appeals provided the specific factual context surrounding the investigation:
At trial, Deputy Batterson testified that he removed defendant from his cell, where he was jailed on domestic assault, and led him to a conference room. He told defendant that he wanted to speak with him in regard to the victim whom defendant indicated he knew. The interview began around 7:00 or 9:00 p.m. and ended around midnight. Defendant was not read his Miranda rights, but Deputy Batterson told him he was free to leave the conference room and return to his jail cell.
Fields, 2004 WL 979732 at * 1. As noted above, the Michigan Court of Appeals found the fact that Fields was told that he was free to leave to be critical.
It is true that Fields had to leave his cell, and was escorted through a separate door into a conference room in a separate building, and that he was questioned at length.[3] However, Fields was a prisoner. So, the fact that he had to be escorted to *828 the conference room, and could leave and return to his cell at any time, but only with an escort, were normal, routine features of his life as an inmate. While he did have to pass through the J-door, and the conference room was in a separate part of the building, the state court rightly noted that the fact that Fields was told he could leave at any time is of critical significance.[4] This, along with the fact that Fields was already accustomed to incarceration and its accompanying restraints, demonstrate that there were objective circumstances creating an interrogation environment in which a reasonable person, already imprisoned on separate charges, “would have felt free to terminate the interview and leave.” Alvarado, 541 U.S. at 654-55, 124 S.Ct. 2140.
In short, while the majority’s bright line rule frees the courts from the task of scrutinizing individual cases to try to determine whether the suspect already incarcerated on separate charges was in custody for Miranda purposes, I do not believe that it is appropriate for this court to fashion such a rule under the constraints imposed by the AEDPA. Instead, we should apply the context-specific analysis articulated in Miranda and its progeny to determine whether Fields was “in custody.” Under these circumstances, because “fair-minded jurists could disagree over whether [Fields] was in custody,” the state court’s decision that Fields was not in custody was not objectively unreasonable. See id. at 664, 124 S.Ct. 2140. However, since we are bound by Simpson, I concur.

. Furthermore, while Mathis did find that "the courts below were wrong in permitting the introduction of petitioner's self-incriminating evidence given without warning of his right to be silent and right to counsel," the opinion does not provide the facts surrounding the interrogation. 391 U.S. at 5, 88 S.Ct. 1503. Instead, it merely notes that petitioner was "interviewed” while in a penitentiary. Id. at 4 n. 2, 88 S.Ct. 1503. Clearly, applying the context-specific analysis articulated in Miranda and its progeny, there are circumstances in which a prisoner interrogated while incarcerated on separate charges would not be "in custody.” There are also circumstances in which a prisoner would be "in custody.” The facts of Mathis, as set forth in *825 the opinion, simply do not provide a basis on which to draw a bright line—presumably because that was not the issue presented to the Court (the government sought to make Miranda applicable "only to questioning one who is ‘in custody' in connection with the very case under investigation”). Therefore, I would not read the opinion as establishing the bright line rule that the majority does, especially given the Court’s instructions that "Miranda is to be enforced 'only in those types of situations in which the concerns that powered the decision are implicated.' " Berkemer v. McCarty, 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

. The Michigan Court of Appeals did not mention Mathis because it did not need to: Mathis merely instructed courts to apply Miranda in this context, which the Michigan Court of Appeals did.

. The parties agreed to the facts surrounding the interrogation. (R. 19 at 4-9.) In particular, in order to get to the conference room, Fields had to pass through a separate door and Fields was not told he could terminate the questioning at any time, but he was told he could leave at any time and that he would be taken back to the cell. (Id.; R. 20-3 at 5, 14.) Fields had to pass through the "J door,” which is the door that divides the jail from the Sheriff's Department. (R. 15 at 7.) The conference room where he was interrogated was just beyond the J door. Furthermore, Fields testified that the interview began at around 8:00 p.m. or 8:30 p.m. and ended around 1:30 a.m. or 2:00 a.m.
Fields also testified that he was told at one point to "sit my fucking ass down” and that "if I didn't want to cooperate, I could leave.” (R. 15 at 24.) However, this statement makes it clear that continuation of the interview was up to Fields, and it would have indicated to a reasonable person that he was free to terminate the interview and leave. Consequently, it shows the absence of the type of coercive pressures relevant to the Miranda custody inquiry. Indeed, Fields testified that he “assumed” that if he asked to go back to his cell, he would be escorted back to his cell. (R. 15 at 27.)

. It also distinguishes this case from the concern in Shatter, where the Court noted that, "[w]hen a prisoner is removed from the general prison population and taken to a separate location for questioning, the duration of that separation is assuredly dependent upon his interrogator/' because Fields controlled the duration of his stay. — U.S. at -, 130 S.Ct. at 1225 n. 8.