**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William R. MOORE, Defendant–**
**Appellant.**

No. 99–6419.

United States Court of Appeals,
Sixth Circuit.

March 22, 2001.

Before GUY, NORRIS, and SILER,
Circuit Judges.

PER CURIAM.

Defendant, William R. Moore, was indicted and charged with one count of possessing methamphetamine with intent to distribute. *See* 21 U.S.C. § 841(a)(1). Moore filed a motion to suppress evidence, which was referred to a magistrate judge. After an evidentiary hearing, the magistrate judge filed a report recommending that the motion to suppress be denied. After reviewing the defendant's objections, the district judge denied the motion to suppress, but for reasons that differed somewhat from that of the magistrate judge. The defendant then entered a conditional plea of guilty, reserving his right to appeal the suppression issue. This appeal followed defendant's being sentenced to the mandatory minimum term of 120 months. Our review of the record convinces us that the motion to suppress was properly denied, and we affirm on the basis of the district court opinion.

I.

Shortly before 11:00 p.m. on January 27, 1999, Laurel County Deputy Sheriffs Ryan Young and Richard Dalrymple received a report from their dispatcher concerning the possible theft of a blue 1986 GMC truck. Almost immediately thereafter, the officers received an unrelated message from dispatch concerning a suspicious vehicle at the East Bernstadt Medical Center. The medical center closes at 5:00 p.m. Upon arriving at the medical center, the officers observed the suspicious vehicle circling a blue GMC or Chevrolet pickup truck. These were the only two vehicles in the parking lot.[1] The officers activated their blue roof-light, which also automatically activated a dash-mounted video camera.

---

1. The officers subsequently determined the blue truck was not the one reported stolen.

Deputy Young approached the driver's side of the vehicle, while Deputy Dalrymple went to the passenger side. The vehicle was driven by defendant Moore, and there were two female passengers in the front seat. While asking the defendant for his driver's license, Young observed a "large amount of some small plastic baggies" on the seat between the driver and the middle passenger. Young also noticed that Moore appeared to be very nervous and kept moving his left hand in and out of his left front pocket. At this point, Moore was asked to exit the vehicle.

The transcript of the evidentiary hearing indicates what happened next:

Q. Once you get the defendant outside the car, what happens?

A. I asked Mr. Moore if he had anything in his pockets or anything, and he stated that he had some keys and some money. Did a pat down of the outside of his clothing on Mr. Moore's pockets, and that's where I noticed the large— the large bulky substance that was in his left pocket. When I went into his left— when I was patting his loft pocket, I came back over, and Mr. Moore, quote, rammed his hand into his left pocket and he would not remove it upon my request. And I used threat of force for him to move his hand and he still not would [sic] take his hand out of his pocket. And I had to physically pull it out of the pocket and go into the pocket to see what it was. I didn't know if at that time it was a gun or what it was that he was—he wouldn't take his hand out until I pulled it out.

On cross-examination what occurred was elaborated upon:

Q. .... What did you feel in that pocket?

A. As I said, ... when I was patting his pocket, he rammed his left hand into his pocket, so I placed my hand over his.

And when I ordered him to take his hand out of his pocket, he wouldn't. And that's when I—when he—when he finally moved it I could feel the hard, bulky substance. When I placed my hand over his, it was larger than it should have been for a hand.... There was more in the pocket than just a fist. And he, when I finally got his hand out of his pocket, I could feel the hard bulky substance.

After being asked to review the video tape of the incident, Young was cross-examined further:

Q. Okay. Now, when you touched his left pocket, what did you feel?

A. As I said before, I can't recall if I had touched it for—before he had rammed his hand in his pocket or if it was at the same time. I know that I remember feeling something in his pocket that was hard and I did not know what it was. His left hand, I remember feeling his left hand in his pocket with that substance also when he would not remove his hand from his pocket. And like I said, I had to physically remove his arm from his pocket and go inside the pocket to get the item.

Q. Did you feel what felt like a gun in his pocket?

A. I didn't—as I said before, I'm thinking about my safety from the get go, and that's what I didn't know, if it was a gun or what it was. It was hard. It could have been a weapon. I didn't know what it was.

Q. How big was it?

A. About the size of my fist.

## II.

At the conclusion of the evidentiary hearing, the magistrate judge concluded:

[I]t is patent that the officers had more than reasonable suspicions to suspect

that criminal activity was afoot. Additionally, upon observing the defendant's attempt to hide the "bulge" in his left front pocket, the suspicious movements of his hand and the later refusal to remove his hand from the pocket, the officer had every right to believe that a gun or other weapon could be inside his pocket. For his own safety, as well as that of his fellow officer, Deputy Young was authorized to conduct a "pat down" search of the person of the defendant. *Cf. United States v. Myers*, 102 F.3d 227, 232 (6th Cir.1996). The plain view doctrine extends to "plain feel". An officer properly patting down a suspicious stop under *Terry*, in search for weapons may seize an object whose contour and mass make it apparent that it is a sizable object. *See Minnesota v. Dickerson*, 508 U.S. [366], 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Finally, the baggies which the officers observed in the passenger compartment of the automobile obviously were in plain view and the seizure of same should not be suppressed.

The district court after conducting a *de novo* review of the record concurred in the result reached by the magistrate, but relied upon different legal grounds.

When reviewing the constitutional validity of a *Terry* search, the court must consider whether a reasonably prudent officer in the circumstances of the challenged search is warranted in his belief that his safety or that of others is in danger. *United States v. Swann*, 149 F.3d 271, 275 (4th Cir.1998). Here, the officer detected a lump in the defendant's left pocket that, after the initial frisk, the officer could not pinpoint as a weapon or non-weapon. If an officer is unable to exclude the possibility of a weapon, he may reach into a suspect's pocket and remove the item and remain within the confines set forth in *Terry*. *Id.*; *United States v. Strahan*, 984 F.2d

155 (6th Cir.1993); *United States v. Rogers*, 129 F.3d 76 (2nd Cir.1997). Based on the contour of the bulge, the defendant's nervous behavior, and the defendant's act of placing his hand in the pocket and refusing to remove his hand, the officer was justified in his belief that the object may have been a weapon and thus could reach in and remove the object from the ·defendant's pocket under *Terry*.

Police officers may seize contraband detected during the lawful execution of a *Terry* search. *See Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Here, the illegal drugs were detected during a lawful *Terry* search and the officer had probable cause to believe that the powder and rocks that were removed from the defendant's pocket were contraband. Upon their removal it was immediately apparent to the officer that the contents of the defendant's pocket were illegal drugs. That, combined with the defendant's nervous behavior and the presence of a large number of baggies— commonly used in the drug trade—was sufficient to give the officer probable cause for the drugs' seizure under *Dickerson* and its predecessors.

On appeal, defendant admits that the officers had reasonable suspicion to support a *Terry* stop and pat down. Defendant argues, however, that the pat down did not justify the officer physically putting his hand in defendant's pocket and removing the contraband. We disagree. For the reasons set forth by Judge Coffman in her written opinion and order, we conclude that the motion to suppress was properly denied.

AFFIRMED.