**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph KIMBER, Defendant–Appellant.**

**No. 00–5545.**

United States Court of Appeals, Sixth Circuit.

Feb. 20, 2002.

Before MARTIN, Chief Judge;
BATCHELDER, Circuit Judge;
SARGUS, District Judge.*

SARGUS, District Judge.

Joseph Kimber appeals the district court's denial of his Motion to Suppress Evidence and the sentence imposed pursuant to his conditional plea of guilty to a charge of possession with intent to distribute marijuana and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).[1]

---

\* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

1. Kimber entered a plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2) with the approval of the court reserving his right to appeal the district court's denial of his Motion to Suppress.

For the reasons that follow, the conviction and sentence are AFFIRMED.

## I.

Kimber was indicted on a single count of possession with intent to distribute marijuana and crack cocaine, in violation of 21 U.S.C. § 841. Subsequently, Kimber filed a Motion to Suppress evidence obtained by officers during what Kimber alleges was his third detention. Kimber contends that, in the absence of reasonable suspicion, the third detention was constitutionally impermissible.

A hearing on Kimber's motion was held before a magistrate judge, who summarized the evidence as follows. In the early morning hours of February 24, 1999. Knoxville Police responded to a double homicide at the Ridgebrook Housing Development. The officers attempted to identify witnesses as well as suspects. A criminal investigator received information that a male wearing a black puffy-type jacket and brown toboggan had been seen standing in front of one of the buildings in the housing project. The individual was described as being very upset. The investigator directed Officer Jeff Damewood to interview the person.

Damewood thereafter approached the defendant who was found in front of one of the buildings in the project. After two separate interrogations, Kimber denied any knowledge of the homicides and indicated that he did not wish to be interrogated. The interviews were terminated.

Shortly thereafter, a detective instructed Damewood to again look for and interview Kimber. Damewood, accompanied by Officer Chris Bell, found Kimber walking on a street with two other males. The officers shouted to him, erroneously referring to him as "Michael." Rather than stopping. Kimber proceeded to walk onto the porch of a nearby home. With his right hand, he vigorously knocked on the door of the house, while his left hand remained in the pocket of his jacket. As Officer Bell approached and again called the individual "Michael," the defendant turned and stated, "It's me Bell." Officer Bell then recognized the defendant as Joseph Kimber. Bell was familiar with Kimber, and described him as appearing unusually upset and nervous.

Bell directed the defendant to remove his hand from his left pocket. According to Bell, the defendant did not comply with his directive. Bell thereupon drew his weapon, ordered the defendant to remove his hand from his pocket and told Kimber to lie on the ground.

While Kimber was on the ground. Officer Bell observed a plastic grocery bag in the defendant's pocket. Within the bag were a series of smaller bags containing a substance that Bell recognized as marijuana. Other bags were found containing white substances which the officers recognized as crack cocaine. Kimber was then arrested for trespassing and for drug trafficking.[2]

Following an evidentiary hearing, the magistrate judge issued a Report and Recommendation concluding that Kimber's Motion to Suppress be denied. Kimber thereafter filed objections to the Report

---

**2.** Prior to the events giving rise to these charges, Kimber had been placed on a list of persons not authorized to be on the premises of the housing project. Officer Bell recognized Kimber as a named individual on such list. Bell also charged Kimber with criminal trespass. The government argued before the district court that Kimber's arrest and subsequent search was justified on this basis as well. The district court declined to address the argument in light of its conclusion that the interrogation and search were constitutional. Because we reach the same conclusion, this Court does not address the issue.

and Recommendation. The district court adopted the recommendation to deny the Motion to Suppress.

## II.

This Court reviews the district court's factual findings in a suppression hearing for a clear error and reviews the district court's conclusions of law *de novo. United States v. Leake,* 95 F.3d 409, 416 (6th Cir.1996). In addition, this Court reviews *de novo* determinations made by a district court as to whether the particularized facts or circumstances below establish a seizure or detention in contravention of the Fourth Amendment. *United States v. Buchanon,* 72 F.3d 1217, 1223 (6th Cir.1995).

■ In *United States v. Waldon,* 206 F.3d 597, 602 (2000), this Court explained the three types of permissible encounters between the police and citizens. These include:

(1) The consensual encounter, which may be initiated without any objective level of suspicion;

(2) The investigative detention which, if nonconsensual, must be supported by a reasonable, articulable suspicion of criminal activity; and

(3) The arrest, valid only if supported by a probable cause.

According to Kimber, he was subjected to three investigative detentions. He asserts that the third detention, which yielded the contraband, was based on the precise set of circumstances as were the first two detentions. He argues that because the third stop was not based upon any new information, the detention was not supported by reasonable suspicion of criminal activity. This Court disagrees.

■ Initially, the first two encounters between Kimber and the police were consensual, rather than investigative detentions. In determining whether an encounter is of an investigatory nature, this Court must determine "whether under the totality of the circumstances a reasonable person would have felt free to end [the] encounter." *United States v. Buchanon,* 72 F.3d 1217, 1244 (6th Cir.1995). With regard to the first two encounters. Kimber refused to speak to the police officer and ended his conversations with Officer Damewood. Damewood did not continue to interrogate Kimber, but simply terminated his questioning. In the absence of any other circumstances, the Court concludes that the first two encounters were both brief and consensual.

■ Further, the record demonstrates that the third encounter began as an attempt by the police to engage in consensual discussions with the appellant. During the course of such attempt, however, the encounter became investigatory, at least prior to the time the contraband was discovered on the person of the appellant. The issue before this Court is whether the specific factual circumstances preceding the final encounter with the police were sufficient to justify an investigative detention.

Officer Bell testified that he previously knew the appellant and had never seen him so nervous. At the time of the encounter, Kimber was vigorously knocking upon the door of a residence with his right hand, while his left hand remained in his jacket pocket. Further, according to Bell, Kimber refused to remove his hand from his pocket, despite Bell's order to him. Finally, the officers were engaged in an investigation of a double homicide which had occurred in the vicinity only a short period of time before the encounter.

■ Based upon these circumstances, the officers had reasonable suspicion sufficient to justify an investigative detention. This Court has held that a suspect's refus-

al to removal his hand from a jacket pocket, coupled with other behavior, creates reasonable suspicion to justify a pat down search. *United States v. Moore,* 8 Fed. Appx. 354, 356 (6th Cir.2001).

The district court concluded that the officers had a reasonable suspicion upon which to justify a stop under *Terry v. Ohio,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). The district court also noted that, while the appellant was not himself a suspect at that time, the police had a reasonable suspicion that Kimber might have information leading to the apprehension of those involved in the double homicides. In the course of such investigative stop, Kimber exhibited behavior upon which a reasonable officer could fear for his or her safety, thereby justifying a pat down search.[3]

Kimber cites *United States v. Peters,* 10 F.3d 1517 (10th Cir.1993) for the proposition that successive investigatory stops must be based on new evidence acquired after the first stop. In *Peters,* an officer pulled over the defendant's vehicle on a traffic violation and, with the consent of the defendant, conducted a consensual search of the vehicle. Although the officer found no contraband, he radioed ahead to a border patrol agent that the occupants in the vehicle had acted suspiciously. The agent thereupon stopped the vehicle a second time and discovered contraband. The Court of Appeals held that the second investigatory, nonconsensual stop was based on "nothing more than the information provided ... and a repeat occurrence of the same suspicious conduct that Agent Ochoa knew had proved illusory at the earlier stop." *Peters,* 10 F.3d at 1522–23.

Unlike the facts in *Peters,* in this case, what began as an attempt by the police to consensually obtain additional information from the appellant developed into circumstances in which an investigative detention was justified. Immediately prior to the third encounter, the police did not have a reasonable basis upon which to detain or pat down Kimber. In the course of an otherwise permissible consensual encounter, however, Kimber's own activities, including his refusal to remove his hand from his left jacket pocket together with his nervous behavior, gave the officers reasonable suspicion upon which to make an investigatory detention. While the encounter may have been the third attempt to interrogate Kimber, the appellant was not a suspect. The record does not support a conclusion that the police repeatedly sought out Kimber for purposes inconsistent with the Fourth Amendment.

The district court did not err when it refused to suppress the evidence obtained during the third encounter between the appellant and the police officers.

### III.

Kimber next alleges that the district court erred by imposing an enhanced sentence based on drug quantity, when such quantity was not alleged in the indictment as an element of the offense. Kimber argues that the sentence was imposed in violation of the recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

■ Errors not raised in the district court are reviewed on appeal for plain error. *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).[4] According to the appellant, the

---

**3.** Even in the absence of a pat down search, Officer Bell testified that once Kimber withdrew his hand from his left jacket pocket he

saw the bag containing the drugs which was located in the same pocket.

**4.** Because Kimber was entitled to the benefit of 18 U.S.C. § 3553(f), together with U.S.S.G.

district court imposed an enhanced sentence based on drug quantity when it sentenced him to a term of supervised release of four years. Kimber claims that given the omission of the drug quantity from the indictment, he stands convicted of a class C felony, which provides for a supervised release term of only three years.

The issue raised by Kimber hinges on the interplay between 18 U.S.C. § 3583(b) and 21 U.S.C. § 841(b)(1)(c). 18 U.S.C. § 3583(b) provides that, for class C felonies "except as otherwise provided, the authorized terms of supervised release are ... not more than three years."[5] 21 U.S.C. § 841(b)(1)(c), in turn, authorizes "a term of supervised release of at least three years." Kimber argues that, in the absence of drug quantities being alleged in the indictment, he has only been convicted of a class C felony under § 841(b)(1)(c). He concludes that the district court was therefore limited to imposing a term of supervised release of not more than three years.

This argument, as acknowledged by Kimber, was squarely addressed and rejected in *United States v. Page*, 131 F.3d 1173, 1180 (6th Cir.1997). In *Page*, this Court held that the specific provisions of § 21 U.S.C. 841(b) prevail over the general provisions of § 18 U.S.C. 3583(b). This is evidenced by the words "except as otherwise provided" at the beginning of § 3583(b). To adopt the construction urged by Kimber would render the two statutes irreconcilable. Instead, the more

logical interpretation, as found in *United States v. Page*, is that the terms "except as otherwise provided" expressly provide that any specific sentencing statute may override the general provisions of § 3583(b). Therefore, the Court concludes that no *Apprendi* error occurred in that Kimber's sentence was not increased above the statutory maximum based on factors not set forth in the indictment.

Accordingly, we AFFIRM the sentencing order of the district court.

---

§ 2D1.1(b)(6) and § 5C1.2, known as the safety valve adjustment, he was sentenced under the provisions of the United States Sentencing Guidelines, rather than the mandatory minimum sentence otherwise applicable to his offense under 21 U.S.C. § 841. While the term of imprisonment imposed is therefore not at issue following the decision in *Apprendi,* the appellant does challenge the four year term of supervised release.

5. 18 U.S.C. § 3559 provides that if the maximum term of imprisonment is less than 25 but more than ten years, the crimes are classified as class C felonies. Because no drug quantity was referenced in the indictment, under 21 U.S.C. 841(b)(1)(C), Kimber faced a maximum term of imprisonment of 20 years.