OPINION
{¶ 1} Defendant-appellant Shawn S. Wells appeals his conviction entered by the Licking County Court of Common Pleas, on one count of rape, in violation of R.C. 2907.02(A)(1)(b); and one count of gross sexual imposition, in violation of R.C.2907.05 (A)(4), after the trial court found him guilty upon accepting appellant's no contest plea. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On December 10, 2004, the Licking County Grand Jury indicted appellant on the aforementioned charges. Appellant appeared for his arraignment on December 20, 2004, and entered a plea of not guilty to the charges. On January 28, 2005, appellant filed a Motion to Suppress statements made by him during an interview conducted at the Licking County Municipal Court Adult Probation Department. The trial court conducted a hearing on the motion.
 {¶ 3} The relevant facts to the issue at hand are as follows. On December 1, 2004, appellant met with his probation officer, Becky Moffett, at the Licking County Municipal Court Adult Probation Department for his regularly scheduled meeting. Appellant met with his probation officer every 4-6 weeks. Appellant's appointment was scheduled for 2:15pm, however, he contacted Moffett, advising her he was at divorce court, would not make the scheduled appointment time, and wanted to reschedule. Moffett advised appellant he needed to come to the appointment. Appellant arrived approximately one hour and fifteen minutes late. When appellant arrived, Moffett informed him Detective Chris Slayman and Heidi Ballangee, a social worker with the Licking County Department of Children's Services, were at the office and wanted to speak with him. Moffett did not have any discussion with appellant regarding why Detective Slayman and the social worker wanted to see him. Moffett also did not discuss the case in which she was supervising appellant. Moffett walked appellant down the hallway to a conference room approximately four offices away from her office.
 {¶ 4} Detective Slayman greeted appellant at the door of the conference room and showed him in. The detective informed appellant he was not under arrest, was free to leave, and was not obligated to answer any questions. It is also the detective's normal practice at the beginning of a non-custodial interview to advise the interviewee the door is closed for privacy purposes only. According to Detective Slayman, appellant advised him he wanted to "get this cleared up" and was anxious to tell his side of the story. Tr. of Suppression Hearing at 13. At no point during the interview did Detective Slayman indicate to appellant he could not leave or he would be arrested if he did not cooperate. After advising appellant of the nature of the charges, Detective Slayman commenced an interview which lasted approximately forty-five minutes to one hour. Thereafter, appellant provided the detective with a tape recorded statement, which was approximately twenty minutes long. During the interview, appellant admitted to the offenses charged. Upon completion of the taped statement, Detective Slayman placed appellant under arrest.
 {¶ 5} Appellant also testified at the Suppression Hearing. Although his probation officer instructed him not to leave the office when he finished speaking with Detective Slayman because he needed to drop a urine sample, appellant stated he thought he was free to leave while he was talking to the detective. Appellant did, however, expect to be arrested after his urine was tested. Appellant noted Moffett never told him he had to cooperate with the detective. Further, appellant confirmed he wanted to get the matter taken care of and Detective Slayman had told him on at least two occasions he was free to go at any time.
 {¶ 6} Via Judgment Entry filed February 22, 2005, the trial court denied appellant's Motion to Suppress, finding he was not under arrest and was not in custody at the time of the interview, and the procedural safeguards of Miranda v. Arizona (1966),384 U.S. 436, were not required.
 {¶ 7} Thereafter, appellant appeared before the trial court and withdrew his plea of not guilty and entered a plea of no contest to the charges. The trial court conducted a Crim.R. 11 colloquy with appellant, accepted appellant's plea, and found appellant guilty. The trial court ordered a pre-sentence investigation report, and continued sentencing until the report was completed. The trial court imposed a sentence of five years on the rape conviction, and two years on the gross sexual imposition conviction, and ordered the sentences to run concurrently. The trial court memorialized the sentences via judgment entry filed May 18, 2005, and May 19, 2005.
 {¶ 8} It is from this conviction appellant appeals, raising as his sole assignment of error:
 {¶ 9} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 I {¶ 10} Herein, appellant submits the trial court erred in denying his Motion to Suppress.
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See, State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726.
 {¶ 12} Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See: State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141.
 {¶ 13} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906; and State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. As the United States Supreme Court held in Omelas v.U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 14} Appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing appellant's sole assignment of error, we must independently determine whether the facts meet the appropriate legal standard.
 {¶ 15} Appellant maintains he was in custody when Detective Slayman questioned him; therefore, the officer was required to provide him with Miranda warnings. Appellant submits because he was on probation, he knew if he declined to participate in the interview, he would be arrested for violating the terms of his probation. The State counters appellant was not in custody when the questioning occurred, and, Miranda was not implicated. The State adds the fact appellant was on probation and was required to come to the probation department for a regularly scheduled meeting, did not create a custodial situation.
 {¶ 16} We begin our analysis by stating the basic premise a duty to administer Miranda warnings arises only when an accused is taken into custody. Miranda v. Arizona (1966), 384 U.S. 436,444, 86 S.Ct. 1602, 16 L.Ed.2d 694. For purposes of Miranda
warnings, "custody" is defined as a formal arrest or restraint on the freedom of movement to the degree associated with a formal arrest. State v. Mason (1998), 82 Ohio St.3d 144, 154,694 N.E.2d 932. In order to determine whether a person was in custody, the court should apply a totality-of-circumstances test, including where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved. Stansbury v. California (1994), 511 U.S. 318,114 S.Ct. 1526, 128 L.Ed.2d 293.
 {¶ 17} The trial court must determine how a reasonable person in the accused's position would have perceived the situation.Berkemer v. McCarty (1984), 468 U.S. 420, 442, 104 S.Ct. 3138,82 L.Ed.2d 317. The United States Supreme Court has recognized custodial interrogation is not limited to a police stationhouse interrogation. See, Mathis v. United States (1968), 391 U.S. 1,88 S.Ct. 1503, 20 L.Ed.2d 381 (questioning of defendant by an agent from the Internal Revenue Service while defendant was incarcerated); and Orozco v. Texas (1969), 394 U.S. 324,89 S.Ct. 1095, 22 L.Ed.2d 311 (questioning of defendant, by the police, in defendant's bedroom). Also, Fifth Amendment protection is not limited to any single source of official interrogation. Where a defendant is subject to the inherently compelling pressures of a custodial situation, he is entitled to warning before any official interrogation. Estelle v. Smith (1981),451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (statements made to court-appointed psychiatrist).
 {¶ 18} In Minnesota v. Murphy, (1984), 465 U.S. 420,104 S.Ct. 1136, 79 L.Ed. 409, the United States Supreme Court reviewed a case in which a probation officer questioned a probationer at the probation officer's office about other crimes the probationer allegedly committed. Id. at 423. The probation officer did not provide the probationer with Miranda warnings. During the questioning, the probationer admitted he committed the crimes. Id. at 424. Following his indictment for these crimes, the probationer sought to suppress the statements he made to his probation officer. Id. at 425.
 {¶ 19} The United States Supreme Court stated: "[T]he general obligation to appear and answer questions truthfully did not itself convert Murphy's otherwise voluntary statements into compelled ones * * * [because] [t]he answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." Id. at 427.
 {¶ 20} The Murphy Court concluded the probationer's statements to his probation officer were not compelled; therefore, should not have been suppressed. Id. at 441. Thus, the probationer had to timely assert his Fifth Amendment privilege. The probationer was not in police custody when the questioning occurred. The Court also concluded a reasonably perceived threat of revocation of probation does not render the Fifth Amendment privilege self-executing, noting:
 {¶ 21} "The legal compulsion to attend the meeting with the probation officer and to answer truthfully the questions of the officer who anticipated incriminating answers is indistinguishable from that felt by any witness who is required to appear and give testimony, and is insufficient to excuse respondent's failure to exercise the privilege in a timely manner." Id. at 421. However, "[i]f the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." Id. at 435.
 {¶ 22} As in Murphy, appellant in the case sub judice had a legal compulsion to attend the meeting with his probation officer. However, there is no record demonstration the State, either expressly or impliedly, asserted appellant's invocation of his Fifth Amendment privilege would lead to revocation of his probation.
 {¶ 23} Detective Slayman did not conduct a police stationhouse interview. Rather, the detective contacted Becky Moffett, appellant's probation officer, informed her of the allegations against appellant, and asked the date and time of appellant's next scheduled meeting so he could talk to appellant about the allegations. The record reveals only Detective Slayman conducted the questioning. Moffett was not in the conference room during this time.
 {¶ 24} The only issue left for this Court to determine is whether appellant was in custody during Detective Slayman's questioning. As noted above, we must review certain factors to determine whether a person was in custody. The questioning in this case occurred in a conference room at the Licking County Municipal Court Adult Probation Department on the date of a regularly scheduled appointment. The record indicates no objective indicia of arrest present during the interview by Detective Slayman. In fact, the detective advised appellant he was not under arrest, he was free to leave at any time, and he would be leaving the probation department following the conclusion of the interview. The record is devoid of any evidence appellant's freedom was in any way restrained. Detective Slayman questioned appellant for less than one hour before he taped appellant's statement, which lasted approximately twenty minutes.
 {¶ 25} We conclude appellant cannot establish he was in custody when Detective Slayman questioned him about the allegations. Appellant was not formally arrested and there were no restraints on his freedom of movement of the degree associated with a formal arrest. Because appellant was not in custody, he was not entitled to Miranda warnings, and the trial court properly denied his motion to suppress.
 {¶ 26} Appellant's sole assignment of error is overruled.
 {¶ 27} The judgment of the Licking Court of Common Pleas is affirmed.
Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.