IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. PD-1986-05






GERALD HERRERA, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


IN CAUSE NO. 03-04-00766-CR FROM THE THIRD COURT OF APPEALS


CALDWELL COUNTY






Holcomb, J., filed a dissenting opinion, in which Price, J., joined.




 After reviewing the record, I conclude that: (1) appellant met his burden of establishing that his
unwarned oral statements to the Lockhart police were the product of custodial interrogation (1) and (2) the
trial court abused its discretion when it denied appellant's motion to suppress and admitted his unwarned
oral statements into evidence. (2) Accordingly, I would reverse the judgment of the court of appeals and
remand the case to that court for a harm analysis.

 Allow me to review the relevant facts: Shortly after he was indicted for aggravated assault,
appellant filed a pretrial motion in the trial court to suppress any oral statements that may have been taken
from him in violation of the Fifth Amendment as interpreted in Miranda v. Arizona, 384 U.S. 436 (1966). 
Appellant's motion to suppress was carried forward to his trial, which was held before a jury. 

 Among the State's witnesses at the guilt stage of appellant's trial were William Tedford, Abel
Garza, and David Powell. All three of these witnesses testified, in relevant part, before the trial court ruled
on appellant's motion to suppress. 

 Tedford testified that: (1) he was a Lockhart police sergeant; (2) one night in July 2001, while he
was patrolling Lockhart in his police car, he received a radio dispatch advising him of "a large disturbance
taking place at [the] El Mira Mar Bar [on] North Pecos Street"; (3) he proceeded to the scene of the
disturbance, and, upon arrival, a fellow Lockhart police officer advised him to stop a vehicle that was
attempting to leave the scene; (4) he stopped the vehicle in question, and, using the occupants' driver's
licenses, he identified them as Maria Herrera, Natividad Herrera, and their son, appellant; (5) appellant was
seated in the backseat of the vehicle; (6) Maria Herrera advised him "that they had been in a fight" and
"that those people had hit her husband [Natividad] with a bottle"; (7) as he was talking with Maria Herrera,
one Shaun Russell, who was wounded and bleeding badly, rushed up to him, pointed at all three Herreras,
and said, "They cut me"; (8) he believed at that time that, in light of Russell's accusation, he had probable
cause to arrest all three Herreras; (9) he contacted Lockhart Police Department Investigator David Powell,
who was on call that night, to assist in the investigation of the fight; and (10) he was still at the scene when
Powell arrived there sometime later.

 Garza testified that: (1) he was a Lockhart police officer; (2) during the early morning hours of July
22, 2001, while he was patrolling Lockhart in his police car, he received a radio dispatch concerning "a
disturbance in progress involving multiple subjects"; (3) he proceeded to the scene of the disturbance and,
upon arrival, found that Sergeant Tedford was already there and situated beside a red vehicle; (4) he
identified the occupants of the red vehicle as Maria Herrera, Natividad Herrera, and appellant; (5) he
searched the Herreras' vehicle and found a knife on the back floorboard; and (6) he arrested appellant on
an outstanding warrant and took him to the county jail.

 Finally, Powell testified that: (1) he was an investigator with the Lockhart Police Department; (2)
his duties as an investigator included "tak[ing] statements, interviews, [and] interrogations"; (3) at
approximately 1:00 a.m. on July 22, 2001, he was called to the scene of "a large fight" at the Mira Mar Bar
in Lockhart; (4) upon arrival, Sergeant Tedford gave him "a brief rundown of what he knew" and told him
"that some people had been stabbed" and "that the Herreras were involved"; (5) he (i.e., Powell)
determined at that time that some of the people stabbed were African-American; (3) (6) at approximately 8:00
a.m. on July 22, 2001, he went to the county jail and, in a "one-on-one interview," questioned appellant
about "what occurred" on the previous night; and (7) although he believed that appellant was in custody
at that time, he did not Mirandize him before questioning him.

 Before Powell could describe for the jury exactly what appellant had told him, appellant, citing his
pretrial motion to suppress, objected that his statements to Powell had been taken without Miranda
warnings and thus were inadmissible at trial. The trial court, without explaining its reasoning, overruled
appellant's objection and allowed Powell to proceed with his testimony. (4) At the time the trial court ruled,
it had heard all the testimony recounted above.

 Under Miranda, law enforcement officials, before questioning an individual in custody, must inform
him that: (1) he has the right to remain silent; (2) anything he says can be used against him in a court of law;
(3) he has the right to the presence of an attorney during any questioning; and (4) if he cannot afford an
attorney, one will be appointed for him. Miranda v. Arizona, 384 U.S. at 478-479. These warnings
protect an individual's Fifth Amendment right not to incriminate himself against the inherently coercive
nature of custodial interrogation. Id. at 444. "[C]ustodial police interrogation, by its very nature, isolates
and pressures the individual." Dickerson v. United States, 530 U.S. 428, 435 (2000). "Even without
employing brutality, the 'third degree,' or [other] specific strategems, . . . the very fact of custodial
interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." Miranda
v. Arizona, 384 U.S. at 455.

 Miranda warnings must be given only when an individual is both in custody and subjected to
interrogation. Illinois v. Perkins, 496 U.S. 292, 297 (1990). This is so because custody and interrogation
may create mutually reinforcing pressures that may overcome an individual's will to remain silent. Ibid. 
The Miranda warnings must be given even when the purpose of the custody is unrelated to the purpose
of the interrogation. Mathis v. United States, 391 U.S. 1, 4-5 (1968).

 In determining whether an individual is "in custody" for purposes of receiving Miranda warnings,
"the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the
degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quoting
Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). The term "interrogation," for purposes of receiving
Miranda warnings, "refers not only to express questioning, but also to any other words or actions on the
part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." 
Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The phrase, "incriminating response," refers to any
response - whether inculpatory or exculpatory - that the prosecution may seek to introduce at trial. Id.
at fn. 5.

 Given the evidence before the trial court at the time it ruled on appellant's objection to Powell's
testimony, any reasonable trial court would have necessarily concluded that appellant had satisfied his
burden of establishing that, at the time Powell questioned him, he was "in custody" for purposes of receiving
Miranda warnings. The testimony of both Powell and Garza established that, at the relevant time, appellant
was under formal arrest in the Caldwell County Jail on an outstanding warrant. Appellant was, therefore,
as a matter of law, "in custody" for purposes of Miranda. California v. Beheler, 463 U.S. at 1125;
Mathis v. United States, 391 U.S. at 4-5. See Cooks v. State, 844 S.W.2d 697, 734 (Tex.Crim.App.
1992) ("Clearly, while incarcerated in the Dallas County Jail, appellant was 'in custody' [for purposes of
Miranda]."); W. LaFave, et. al, Criminal Procedure § 6.6(d) (2nd ed. 1999) (an individual in custody
at a police station is "obviously" in custody for purposes of Miranda). Nothing in Miranda or its progeny
suggests that it matters where in the jail an arrested individual is at the moment he is subjected to
questioning.

 The cases cited by the majority today for its novel holding all involve prison administration and
prison inmates, not persons who are under arrest awaiting further proceedings. The majority's new multi-factor test for determining whether a person is in custody for Miranda purposes may make some sense in
the prison context, where inmates may spend months or even years living out their lives, but it certainly has
no application in the present context of an individual under arrest in the county jail. See 35 Geo. L. J. Ann.
Rev. Crim. Proc. 166 (2006) ("A prison inmate is in custody for Miranda purposes only if subjected to
undue restraint on his or her freedom during interrogation.") (citing cases).

 The cases cited by the majority, when examined closely, either involve general "on the scene 
questioning, " an exception to the Miranda rule, see Miranda v. Arizona, 384 U.S. at 477 ( "General on-the-scene questioning as to the facts surrounding a crime . . . is not affected by our holding."), or situations
in which the statement was given voluntarily or under the emergency doctrine. 

 It is also certainly true that, given the evidence before the trial court at the time it ruled, any
reasonable trial court would have necessarily concluded that appellant had satisfied his burden of
establishing that Powell had subjected him to "interrogation" for purposes of receiving Miranda warnings. 
Even assuming, for the sake of argument, that the Fifth Amendment does not require that we impute what
Tedford and Garza knew to Powell, Powell himself testified that Tedford gave him "a brief rundown" of
what he knew; that he (i.e., Powell) knew that appellant, a young adult male, was "involved" in the
interracial brawl; and that he went to the jail for the purpose of questioning appellant about that brawl. 
Given what he knew at the time he questioned appellant, Powell should have known that appellant was,
at the very least, a potential suspect and that questioning him was reasonably likely to elicit an incriminating
response.

 Appellant argues that the court of appeals's holding, that his questioning by police while
incarcerated in jail was not a custodial interrogation, conflicts with Mathis v. United States, 391 U.S. 1
(1968), and Jones v. State, 119 S.W.3d 766 (Tex. Crim. App. 2003). In Mathis, the Government
argued that the Miranda warnings were inapplicable because Mathis "had not been put in jail by the
officers questioning him, but was there for an entirely separate offense." See 391 U.S. at 4. The State in
the present case makes the same argument and has persuaded both the court of appeals and the majority
of this Court. As the Mathis Court clearly stated, however, the "differences"suggested by the Government
were "too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with
reference to warnings to be given to a person held in custody." Ibid. Thus, the Court noted, "We find
nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under
interrogation by officers based on the reason why the person is in custody." Ibid. (emphasis added). 
Indeed, the majority of this Court has quoted precisely this statement from Mathis, see Herrera, ___
S.W.3d at ___ , slip op. at 11, to note that Mathis "appear[s] to be dispositive of the issue before us." 
Id. (emphasis added). But then the majority proceeds to conclude otherwise in light of a majority of federal
cases decided after Mathis. 

 In Jones, appellant was arrested for outstanding traffic warrants and for possession of a controlled
substance on the same day that his great aunt's body was discovered. The police officer who interrogated
him for this murder repeatedly read him his Miranda rights and obtained a valid waiver before obtaining
any statements from him. Jones did not object to the admission of the statement obtained by this officer. 
Rather, the issue before this Court was the validity of the statement about two other murders that another
officer obtained from Jones without informing him of his Miranda rights until after he had already
questioned him and transcribed his answers.

 We held in Jones that "[t]he failure to Mirandize [Jones] before interrogating him led to
constitutional error in the admission of his written statement at trial." Jones, 119 S.W.3d at 772. We
supported this conclusion by an examination of the "'the surrounding circumstances and the entire course
of police conduct with respect to [Jones] in evaluating the voluntariness' of [his] written statement." Id.
at 773 (emphasis added) (footnote omitted). We also noted that "Miranda . . . indisputably requires a
law enforcement agent to give the appropriate legal warnings before any questioning or 'discussion
interview,' not merely prior to signing a written statement after all the custodial interrogation is complete."
Id. at 775 fn.16 (emphasis added). Thus, we held that Jones was "clearly in custody for purposes of
Miranda when he gave the [contested] statement." Id. at 776 (citing Cooks v. State, 844 S.W.2d at
734).

 The majority of this Court uses the facts in Jones to show that a similar decision would not be
justified in the present case, even though the record in Jones was far more detailed than that available in
this case. Moreover, our decision in Jones was not based solely on the facts of that case. We punctuated
our conclusion by citing Cooks v. State, 844 S.W.2d at 734. See Jones, 119 S.W.3d at 776 & fn.25. 
In Cooks, we had clearly stated that appellant had "pointed to no evidence supporting his contention that
[his] statements were the product of custodial interrogation." 844 S.W.2d at 734. Nevertheless, we
concluded that, "[c]learly, while incarcerated in the Dallas County Jail, [Cooks] was 'in custody.'" Id.
(emphasis added). Thus, unlike the majority's holding in the present case, we did not require Cook to
prove that he was "in custody" and held that he was, even though there was no evidence to prove it other
than the fact that he was in jail. Moreover, our citation to Cooks, in Jones, for this precise proposition
reaffirmed our approach in Cooks. Yet, the majority of this Court fails to explain its deviation from that
approach in the present case.

 The majority holds that appellant must show added limitations on his freedom, beyond the fact that
he is under formal arrest, before he is "in custody." I find this amazing and in direct conflict with United
States Supreme Court case law. See California v. Beheler, 463 U.S. at 1125; Mathis v. United States,
391 U.S. at 4-5. Obviously, the officer, in going to the jail, had to either take appellant out of the jail cell
or interview him in the cell. Either way, from appellant's standpoint, he would have felt compelled to yield
to the authority of the investigator if he had not been given the Miranda warnings. See Berkemer v.
McCarty, 468 U.S. 420, 442 (1984).

 In short, I conclude that the record does not support the trial court's implicit decision that appellant
did not meet his burden of establishing "custodial interrogation" for purposes of receiving the Miranda
warnings. I respectfully dissent.


FILED: NOVEMBER 21, 2007

PUBLISH

 

 

 

 
1. A defendant has the burden of establishing that his statements were the product of custodial
interrogation. Wilkerson v. State, 173 S.W.3d 521, 532 (Tex.Crim.App. 2005). 
2. A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. 
State v. Dixon, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). In other words, the trial court's ruling
will be upheld if it is reasonably supported by the record and is correct under any applicable legal
theory. Ibid.
3. The record reflects that the Herreras are Hispanic, as their name would suggest.
4. In its opinion, the majority states that the trial court "determined" that appellant was not in
custody, for the purposes of Miranda, at the time Powell questioned him. That is incorrect. The trial
court gave no explanation for its ruling.