**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AUSTIN TEXAS HOUSTON KELLEY | : | |
| | : | |
| Appellant | : | No. 671 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 19, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002555-2017

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED MAY 14, 2024**

Austin Texas Houston Kelley ("Kelley") appeals nunc pro tunc from the judgment of sentence entered by the Dauphin County Court of Common Pleas ("trial court") following his convictions of rape of a child, aggravated indecent assault, statutory sexual assault, indecent assault of a person less than thirteen, unlawful contact with a minor, and corruption of minors.[1] Before this Court, Kelley challenges the denial of his omnibus pretrial motion to suppress statements he made during a police interview without receiving **Miranda**[2] warnings. Because the trial court properly denied Kelley's motion to suppress

---

[1] 18 Pa.C.S. §§ 3121(c), 3125(b), 3122.1(a)(2), 3126(a)(7), 6318(a)(1), 6301(a)(1)(ii).

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

by determining that Kelley was not in custody for *Miranda* purposes during the interview, we affirm his judgment of sentence.

In 2017, the Pennsylvania State Police were investigating a sexual encounter that had occurred in 2016 between an eleven-year-old minor in Dauphin County and Kelley, who was nineteen years old at the time. On April 20, 2017, Kelley was arrested on an outstanding warrant in an unrelated theft case in Cumberland County. Cumberland County police officers transported Kelley to the booking center at the Cumberland County Prison and held him for preliminary arraignment. Pennsylvania State Police officers, Corporal Shaun Pugh and Trooper Brent Miller, learned of Kelley's arrest. They intercepted Kelley at the booking center before he was released on the other matter and requested that Kelley be brought to the interview room at the booking center. Kelley was not in the prison; he was in the booking center, which is a separate secure facility. N.T., 3/18/2020, at 16, 20.[3] However, no one can enter or depart the booking center on their own accord; anyone coming or going had to be "buzzed" in or out. *Id.*

At the outset, Corporal Pugh informed Kelley that he was "not actually free to leave the prison," because of his obligations on the other, unrelated charge, but that he was "actually free to leave this room at any time and terminate this interview at any time." Commonwealth Exhibit 2 (N.T. of Police

---

[3] For ease and clarity of reference, we herein refer to the notes of testimony from this hearing as the "Suppression Hearing."

Audio Interview of Kelley, 4/20/2017, at 5).[4]  Kelley agreed to submit to a recorded interview.  Audio Interview at 5.  Kelley was not restrained by handcuffs or other methods during the interview.  Suppression Hearing at 9, 14.  Both officers were dressed in business suits and were not carrying their service weapons.  *Id.* at 9.  The door to the interview room remained closed because it was loud outside the room.  *Id.* at 14.  The officers did not read Kelley his *Miranda* rights at any point during the interview.  *Id.* at 19.

After twenty-seven minutes of the interview elapsed, Kelley asked what time it was, and Officer Pugh responded that it was 9:24 a.m.  Kelley said, "Oh; okay.  I don't actually have to be at work until 1, so."  *Id.* at 36.  Later on, as Corporal Pugh was admonishing Kelley for "making [him] work" to "pull" information out, Kelley apologized, telling the officers that he was tired because he had been at the booking center overnight.  *Id.* at 68-69.  Kelley said that he was "just about to get [his] release papers" when the officers showed up.  *Id.* at 69.  He reiterated that he had to work later, adding that he did not have anything to wear, that he had "to go get cleaned up for work and everything," and that he was "kind of tired and just want[ed] to get everything done with."  *Id.*  Corporal Pugh responded, "Okay.  Well, let's get back to the full story," and resumed questioning Kelley.  *Id.*  Shortly thereafter, Kelley denied having sex with the minor.  After Corporal Pugh

---

[4] For ease and clarity of reference, we herein refer to this exhibit as "Audio Interview."

informed Kelley that the minor said they had sex, Kelley admitted that they did, that he thought she was thirteen years old, that he had just turned nineteen, and that he knew it was "wrong." *Id.* at 72, 78. After questioning Kelley about other topics, Corporal Pugh asked Kelley if there was anything he wanted to say before he turned off the recorder. Kelley responded, "I'm heading out, sir." *Id.* at 82. The interview concluded at 9:59 a.m., approximately an hour after it began.

Pennsylvania State Police filed a complaint charging Kelley with the aforementioned crimes and arrested him on the same day as the interview. On December 31, 2019, Kelley filed an omnibus pre-trial motion to suppress the statements he made during the police interview based upon the officers' failure to administer **Miranda** warnings at any time during the interview.[5] Kelley argued that because he was in custody for another case and was not free to leave the booking center, pursuant to **Mathis v. United States**, 391 U.S. 1 (1968), police obtained these statements in violation of the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Omnibus Pre-Trial Motion, 12/31/2019, ¶ 18.

_____

[5] Kelley initially was represented by Chief Deputy Public Defender Jessica Bush. Attorney Bush moved to continue the trial multiple times. On October 11, 2018, Kelley *pro se* filed a motion to suppress his statement to police. The court forwarded his motion to Attorney Bush in accordance with Pa.R.Crim.P. 576(A)(4). A new attorney, Amanda A. Batz, was appointed to represent Kelley prior to trial and filed the counseled motion to suppress.

The trial court conducted a suppression hearing on February 18, 2020. The Commonwealth presented the testimony of Corporal Pugh and a transcript and audio recording of Kelley's interview. Following the hearing, the trial court denied the motion, explaining that, under the totality of the circumstances, it concluded that Kelley was not in custody for purposes of *Miranda*. In particular, the trial court emphasized that the officers told Kelley that he was free to leave the room and terminate the interview at any time, and that Kelley's own statements indicated "that he knew he was free to leave." Order of Court, 2/20/2020, at 3.

Kelley waived his right to a jury trial and stipulated to the Commonwealth's admission of facts without testimony. On November 19, 2021, the trial court found Kelley guilty on all counts. Sentencing was deferred to determine whether Kelley should be classified as a sexually violent predator. On July 18, 2022, the trial court sentenced Kelley to an aggregate term of eight to sixteen years of incarceration, to run concurrently with Dauphin County docket number CP-22-CR-0002555-2017 and consecutively to Cumberland County docket number CP-21-CR-0003462-2018. Kelley did not file a post-sentence motion.

Kelley timely filed a notice of appeal. This Court dismissed Kelley's appeal after Attorney Batz failed to file a brief. The trial court reinstated Kelley's appellate rights via proceedings pursuant to the Post Conviction Relief

Act[6] and appointed Attorney Wendy Grella as new counsel for Kelley. Kelley filed the instant notice of appeal. The trial court and Kelley both complied with Pa.R.A.P. 1925.

Kelley presents three issues for our review:

1. Whether the court erred by denying Kelley's motion to suppress evidence of his statement to police while in custody in violation of the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.

2. Whether Kelley's **Miranda** rights were violated under the United States Constitution and Fifth and Sixth Amendments?

3. Whether Kelley's constitutional rights were violated due to the coercion and implied promises in relation to Corporal Pugh's actions and tactics?

Kelley's Brief at 4 (page numbering supplied; name substituted for role; capitalization altered; suggested answers omitted).

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017). We are bound by the suppression court's factual findings and credibility determinations that are supported by the record. **Commonwealth v. Cooley**, 118 A.3d 370, 373 (Pa. 2015). In contrast, appellate courts give no deference to the suppression court's legal conclusions, which we review de novo. **In re L.J.**, 79 A.3d 1073, 1080 n.6 (Pa. 2013). Our scope of review is

---

[6] 42 Pa.C.S. §§ 9541–9546.

limited to the suppression hearing record and excludes evidence elicited at trial. *Id.* at 1085. "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017).

We address Kelley's first two issues together, as the issues are related and Kelley sets forth similar arguments for both. Kelley premises his argument entirely upon *Mathis*, maintaining that because he was in custody for purposes of the theft case and was not free to leave the booking center, he did not feel free to leave the interview room and was therefore in custody for purposes of the police interview in question. *See* Kelley's Brief at 9-11. Kelley argues that when "an individual is taken into custody for any reason, he must be given his *Miranda* warnings before he is interrogated." *Id.* at 10. Kelley emphasizes that even though the police told him he could leave the room, he was not free to leave the Cumberland County Prison Booking Center. *Id.* Thus, Kelley argues, the interrogation was inherently custodial, *Miranda* warnings were required, and the trial court erred by denying his motion to suppress. *Id.* at 9-11.

In response, the Commonwealth argues that while Kelley was in custody for purpose of the unrelated case, *Miranda* rights did not attach to this case because the police officers wore plain clothes, advised Kelley that he was free to leave the room, and told Kelley he could terminate the interview at any

time. Commonwealth's Brief at 6. In further support of its argument, the Commonwealth highlights Kelley's acknowledgement that he was free to leave and his voluntarily departure at the end of the interview. ***Id.***

Before law enforcement officers question an individual who has been taken into custody or has been deprived of his freedom in any significant way, officers must warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to have an attorney present, and that if he cannot afford an attorney one will be appointed. ***Miranda***, 384 U.S. at 478–79. These procedural safeguards provided by ***Miranda*** are required only when law enforcement officers take the individual into custody **and** subject the individual to interrogation. ***Commonwealth v. Yandamuri***, 159 A.3d 503, 520 (Pa. 2017).

The dispute in this case focuses on the former question: whether Kelley was in custody during questioning. To make this determination, we must consider two discrete inquiries: "(1) an examination of the circumstances surrounding the interrogation; and (2) a determination of whether, given those circumstances, would a reasonable person have felt that he or she was at liberty to terminate the interrogation and leave." ***Id.*** A "person is in custody for ***Miranda*** purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." ***Id.*** "The standard for determining whether an encounter

is custodial is an objective one, focusing on the totality of the circumstances with due consideration given to the reasonable impression conveyed to the individual being questioned." ***Commonwealth v. Cooley***, 118 A.3d 370, 376 (Pa. 2015). "In order to ascertain the defendant's reasonable belief, the reviewing court must consider the totality of circumstances, including factors such as the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat, or use of force; and the methods of investigation used to confirm or dispel suspicions." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1241 (Pa. Super. 2015) (cleaned up).

"Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." ***Oregon v. Mathiason***, 429 U.S. 492, 495 (1978). ***Miranda***'s safeguards are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." ***Id.*** Conversely, because we must focus on the totality of the circumstances, "a law enforcement officer's statement to the suspect that he is free to leave does not, in and of itself, preclude a finding that the suspect is in custody." ***Yandamuri***, 159 A.3d at 520.

In ***Mathis***, a tax revenue agent questioned a prison inmate, who was incarcerated for an unconnected offense, about his prior tax returns. ***Mathis***, 391 U.S. at 3. The government argued that ***Miranda*** did not apply because

Mathis was serving a sentence "for an entirely separate offense" and "had not been put in jail by the officers questioning him." *Id.* at 4. The *Mathis* Court rejected the notion that, to trigger *Miranda*'s requirements, the individual needs to be in custody "in connection with the very case under investigation." *Id.*

But as the United States Supreme Court later explained, "*Mathis* did not hold that imprisonment, in and of itself, is enough to constitute *Miranda* custody." *Howes v. Fields*, 565 U.S. 499, 506-07 (2012). The holding of *Mathis*, the Court stated, is "simply that a prisoner who otherwise meets the requirements for *Miranda* custody is not taken outside the scope of *Miranda*" by virtue of the prisoner's incarceration for an "unconnected offense." *Id.* In other words, a person may be in "custody in a technical sense" but not in custody as "a term of art" for purposes of *Miranda*. *Id.* at 506, 508.

Based upon our review of the record and Kelley's argument presented to this Court, we conclude that the totality of the circumstances supports a finding that Kelley's interview was not a custodial interrogation. The record reflects that Kelley agreed at the outset to submit to the interview, even stating, "[n]othing wrong with the interview." Audio Interview at 2. Kelley referenced the time, indicating that he was willing to stay so long as he could get to work on time. *See id.* at 36, 69. The officers acknowledged Kelley's inability to depart from the booking center, but expressly told him that he was free to leave the particular interview room and free to terminate the interview at any time. Kelley was not restrained, the officers did not display their

- 10 -

weapons, and they wore plain clothes. There was no evidence that the officers blocked Kelley's access to the door and the interview lasted for about an hour. At the end, the officers did not detain him, and Kelley left on his own accord, with Kelley informing the officers that he was "heading out." *Id.* at 82.

Although the interview was not entirely devoid of coercive elements, *see Mathiason*, 429 U.S. at 495, we conclude that the totality of the circumstances demonstrate that the officers did not physically deny Kelley's freedom of action in any significant way or place him in a situation in which Kelley reasonably believed that his freedom of action or movement was restricted by the interrogation. *See Commonwealth v. Baker*, 963 A.2d 495, 501 (Pa. Super. 2008) (concluding that appellant was not in custody and the officers were not required to provide *Miranda* warnings where appellant agreed to meet with the police, the officers informed appellant she was free to leave, appellant was not handcuffed, the interview lasted under two hours, and the officers never threatened appellant, and appellant left the interview when she was finished speaking). Because Kelley was not in custody, the officers were not required to provide *Miranda* warnings, and the trial court did not err in denying his motion to suppress.

In his third and final issue, Kelley purports to raise a constitutional challenge based upon Corporal Pugh's alleged used of coercion and implied promises. Other than incorporating his arguments under the first two issues—neither of which specifically address or even touch upon any alleged "coercion and implied promises"—Kelley's entire discussion in support of this claim

consists of a single sentence: "Appellant feels his constitutional rights were violated and his statement should have been suppressed." Kelley's Brief at 12 (numbering supplied). Kelley fails to cite to any pertinent authority or make any argument that permits appellate review; it is woefully underdeveloped and we therefore find it waived. *See* Pa.R.A.P. 2119; *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (finding a claim raised on appeal waived based upon the appellant's failure to "provide an adequately developed argument by identifying the factual bases of his claim and providing citation to and discussion of relevant authority in relation to those facts").

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/14/2024